REVISED, November 11, 1998

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-11396
_____

JIMMY BOYD,

Plaintiff-Appellant,

versus

STATE FARM INSURANCE COMPANIES;
ET AL.,

Defendants,

STATE FARM INSURANCE COMPANIES,

Defendant-Appellee.
_____

Appeal from the United States District Court for the
Northern District of Texas
_____
November 3, 1998

Before JOLLY, BARKSDALE, and BENAVIDES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Jimmy Boyd appeals a summary judgment on his failure to promote claim and termination claim brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Family Medical Leave Act.  Finding no error, we affirm.

I

Boyd, a black male, began employment at State Farm Insurance Company in 1990 in the Administrative Services Department.  Terry Vice managed the Department.  Boyd was hired by his immediate supervisor Bruce Sutton, who selected Boyd over a Caucasian

applicant. Over the course of Boyd's employment, either or both Sutton and Vice approved Boyd's numerous raises and promotions. By 1994, Boyd had been promoted to Administrative Services Supervisor III.

There was at least one rough ripple on these otherwise calm waters, however. At a 1993 social event, Sutton called Boyd "Buckwheat." Boyd took offense to the remark and complained to Vice and Sutton. Vice privately disciplined Sutton for the remark who apologized to Boyd.

Whether this incident was isolated or whether it presaged trouble to come is an issue in this appeal. In December of 1994, Sutton gave Boyd his annual Performance Planning and Review Evaluation ("PPR"), which was not as favorable as Boyd's past reviews. Included in the PPR were skills that Boyd needed to improve to be eligible for the promotion to Supervisor IV, a promotion that Boyd had earlier sought unsuccessfully.

On June 1, 1995, Boyd submitted a written complaint to Sutton for failure to promote him to Supervisor IV. Sutton and Vice refused to promote Boyd on the grounds that he was not qualified for the position. Consequently, on August 14, 1995, Boyd complained to the EEOC that State Farm had not promoted him because of his race. Two weeks after Boyd's EEOC complaint, State Farm promoted Delores Clemons, a black woman, to Supervisor IV.

Before these events occurred, however, on August 8, 1995, Boyd had requested a medical leave of absence from work. Boyd contended

2

that he suffered from stress and anxiety. Following its policies under the Family Medical Leave Act, as set forth in its handbook, State Farm approved Boyd's requested leave of absence. Boyd, who had a copy of the handbook, remained absent from work for over five weeks.

During his absence, in response to State Farm's numerous requests for medical certification as required by the handbook, Boyd submitted a total of three letters written by Drs. Pascoe and Colley, two psychologists who treated him. Each time Boyd responded, State Farm informed him that the letters were insufficient to support his leave of absence and that he should return to work immediately.

On September 6, 1995, State Farm sent Boyd a written request for medical certification, which also informed Boyd that his absence from work had now been classified as Absent Without Official Leave ("AWOL") and that Boyd would be subject to termination unless he provided immediate documentation of a medical need for his absence. Boyd submitted a second note from Dr. Colley on September 11, 1995, which again failed to indicate that his leave of absence was medically required. Consequently, on September 15, 1995, approximately nine days after its written request for documentation, State Farm terminated Boyd. Sutton took no part in the action. At the time of his termination, Boyd had been classified as AWOL for ten days. Shortly before and after State Farm fired Boyd, it had also terminated Lisa Bitters, a

Caucasian female, and Johnny Kirby, a Caucasian male, for being AWOL for only three and two days, respectively.

Contending that State Farm refused to promote him and eventually terminated him because of his race, Boyd brought suit under Title VII. Boyd also alleged that his termination violated the FMLA because his absence was protected leave under the Act. The district court granted summary judgment for State Farm on each of Boyd's claims. In granting summary judgment on the FMLA claim, the district court elected to disregard Boyd's expert affidavit. On April 2, 1998, Boyd filed this appeal.

## II

We review the district court's grant of summary judgment *de novo*. <u>Walton v. Bisco Industries</u>, 119 F.3d 368, 370 (5th Cir. 1997). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

## III

### A

Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). We continue to adhere to the evidentiary framework of Title VII claims as established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792

4

(1973).  In the context of summary judgment, a substantial conflict in evidence must exist to create a jury question on the issue of discrimination.  Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 983 (5th Cir. 1996)(en banc).  Therefore, a plaintiff can defeat a motion for summary judgment only if the evidence, taken as a whole: (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer; and (2) creates a reasonable inference that race was a determinative factor in the actions of which the plaintiff complains.  Walton, 119 F.3d at 370; Rhodes, 75 F.3d at 994.

B

(1)

Boyd contends that the district court erred in granting summary judgment on his Title VII failure to promote claim.  We assume, as did the district court, that Boyd established a prima facie case on this claim.  Our immediate inquiry is whether State Farm met its burden of offering a legitimate reason for its adverse employment action.  In its motion for summary judgment, State Farm asserted that Boyd was not qualified for promotion.  State Farm produced Boyd's 1994 PPR, which stated that Boyd had only achieved seven of ten performance goals, that he was on schedule to achieve an eighth goal, but that he would not achieve the last two goals. The PPR further stated that Boyd needed to make his work system more productive and improve on organization, communication, and project planning.  Finally, State Farm emphasized that Boyd never

5

challenged the accuracy of the PPR, but indeed indicated his agreement with it by signing the PPR on the date it was completed.

In opposition, Boyd argued that he only had the burden of creating a triable issue of pretext. Boyd asserted that at a 1993 social gathering Sutton called him "Buckwheat," and on some other unspecified occasion had also called him a "Porch Monkey." Relying solely on his affidavit testimony, Boyd further contended that someone told him "State Farm does not hire many people like you . . . you should be happy just to be here." However, Boyd identified neither who made this remark, nor when. Finally, Boyd concluded that the timing of his 1994 PPR created a triable issue of pretext because it occurred only after he complained of the alleged racist remarks.

The district court granted summary judgment in favor of State Farm. The district court held that even if the "Porch Monkey" and "Buckwheat" comments were assumed to be racist, the comments were merely stray remarks and did not imply discrimination. The district court rejected the remaining comments as self-serving and unsupported. Regarding the 1994 PPR, the district court reasoned that the "same actor" principle rebutted the inference that Sutton would discriminate against Boyd because Sutton was the same individual who initially hired Boyd.

(2)

Because Boyd focused solely on proving pretext and offered no evidence from which a reasonable fact-finder could infer that race

6

motivated State Farm's decision not to promote him, the ultimate issue for this court is whether Boyd's failure to promote claim is within the Rhodes subcategory of cases where "[a] jury may be able to infer discriminatory intent . . . solely from substantial evidence that the employer's proffered reasons are false." Rhodes, 75 F.3d at 994. We conclude that Boyd's pretext evidence is insufficient to carry the day.

During Boyd's five-year tenure at State Farm, Sutton referred to Boyd as "Buckwheat"[1] only once. The district court properly categorized this isolated utterance as a stray remark from which no reasonable fact-finder could infer race discrimination. The mere utterance of a racial epithet is not indicia of discrimination under Title VII. Anderson v. Douglas & Lomason Co., Inc., 26 F.3d 1277, 1295 (5th Cir. 1994).[2] Second, the alleged "Porch Monkey"

---

[1] "Buckwheat" is the stereotypical black character from the "Our Gang" or "Little Rascals" television series. However, in the context of employment discrimination law, the term "Buckwheat" is generally considered to be a racial slur or epithet. See Daniels v. Essex Group, Inc., 937 F.2d 1264, 1266 (7th Cir. 1991); Dunbar v. Landis Plastics, Inc., 996 F. Supp. 174, 184 (N.D. N.Y. 1998); Lenoir v. Roll Coater, Inc., 841 F. Supp. 1457, 1461 (N.D. Ind. 1992); Harris v. International Paper Co., 765 F. Supp. 1509, 1518 (D. Maine 1991).

[2] See also, Brown v. CSC Logic, Inc., 82 F.3d 651, 656 (5th Cir. 1996) (specific comments over a lengthy period of time sufficient to establish discrimination); Ray v. Tandem Computers, 63 F.3d 429, 435 (5th Cir. 1995) (single comment too remote to infer discrimination); Guthrie v. Tifco Industries, 941 F.2d 374, 379 (5th Cir. 1991)(comments made at least a year prior to demotion insufficient to infer discrimination); Daniels, 937 F.2d at 1266 (discrimination prevalent where employee was nicknamed "Buckwheat" for first ten years of employment and subjected to other racial taunts).

comment and the other remarks proffered by Boyd are similarly inadequate to meet his burden.  There is no evidence of a causal connection between these isolated remarks and the decision not to promote Boyd.  Absent a causal link between the references and the conduct complained of, such epithets become stray remarks that cannot support a discrimination verdict.  <u>Ray v. Tandem Computers</u>, 63 F.3d 429, 434 (5th Cir. 1995).  Finally, the timing of Boyd's 1994 PPR, approximately one year after Boyd complained of Sutton's "Buckwheat" comment, provides no proof from which a reasonable juror could infer discrimination in the failure to promote claim.[3] Timing standing alone is not sufficient absent other evidence of pretext.  <u>Swanson v. General Services Admin.</u>, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997); <u>Armstrong v. City of Dallas</u>, 997 F.2d 62, 67 (5th Cir. 1993).

In the end, Boyd's summary judgment evidence has fallen considerably short of the mark. State Farm's uncontroverted evidence on its refusal to promote Boyd is sufficient to negate the existence of any material fact on the issue of its discriminatory motive.  <u>Wallace v. Texas Tech University</u>, 80 F.3d 1042, 1048 (5th Cir. 1996). The district court did not err in entering summary judgment against Boyd on his failure to promote claim.

---

[3]The district court applied the "same actor" inference to dispose of this issue.  Our disposal of Boyd's failure to promote claim under <u>Rhodes</u> and its progeny forecloses the necessity of a second analysis of the case under the "same actor" inference. <u>Brown</u>, 82 F.3d at 658 n.25.

8

C

(1)

Boyd next contends that the district court erred in granting summary judgment on his Title VII discriminatory termination claim. Again, we will assume that Boyd established a prima facie case of discrimination. We thus turn to determine whether Boyd successfully rebutted State Farm's proffered reason for his termination.[4]

State Farm argued that it terminated Boyd because Boyd had been AWOL from work for ten days and had failed to prove that his absence was medically necessary under its FMLA policy. State Farm offered the affidavit testimony of the human resources personnel who made the decision to fire Boyd, and the September 6, 1995 notice it sent Boyd informing him of his AWOL status. In response, Boyd asserted that State Farm's proffered reason was pretext because initially he had been out on sick leave before his status was changed to AWOL. Boyd further maintained that other Caucasian employees were also out on sick leave but not terminated for being AWOL. The district court rejected both arguments and granted State Farm's motion for summary judgment.

(2)

We have previously recognized that proof that similarly-situated employees outside of plaintiff's protected class were

_____

[4]We apply the same analysis to Boyd's termination claim as applied to Boyd's failure to promote claim. See Walton, 119 F.3d at 370; Rhodes, 75 F.3d at 994.

9

treated differently may assist in establishing the prima facie case. Walton, 119 F.3d at 372; Nieto v. L&H Packing Co., 108 F.3d 621, 623 (5th Cir. 1997). However, State Farm has produced unrefuted evidence that other Caucasian employees were also terminated for their AWOL status. Under these circumstances, State Farm's decision to terminate Boyd for his AWOL status does not raise a material question of fact that Boyd's termination was motivated by racial animus. The district court's grant of summary judgment on Boyd's discriminatory termination claim is therefore affirmed.

IV

A

(1)

Boyd's final argument is that the district court erred in granting summary judgment on his claim under the Family Medical Leave Act. State Farm moved for summary judgment on the grounds that Boyd's absence from work was not protected under the FMLA because he suffered from no serious health condition at the time he requested leave, as required by the Act. State Farm offered three letters from Boyd's treating physicians, Drs. Pascoe and Colley. State Farm also offered the deposition testimony of these doctors. None of their letters supported Boyd's claim that his absence, purportedly due to the stress and anxiety of his job, constituted protected leave under the FMLA. Further, both physicians testified in their depositions that Boyd was not incapacitated within the

10

meaning of the Act. Boyd responded that the affidavit testimony of his expert witness, Dr. Emerson Emory, created a genuine issue of fact as to whether he suffered a serious health condition under the FMLA.[5] State Farm objected to the affidavit on the grounds that it came two years "after-the-fact" and contradicted the diagnosis of the physicians who treated Boyd at the time of his termination.

The district court characterized the affidavit as "vague and conclusory" because it contained no details as to how, why, or to what extent Boyd was allegedly incapacitated. The district court acknowledged that the expert's statements were made two years after Boyd's termination and reflected no professional opinion formed contemporaneously with the events at issue. The district court further stated that the affidavit provided no foundation for Dr. Emory's conclusions and spoke only in the most general of terms. In short, the district court excluded the affidavit.

On appeal, Boyd argues that Dr. Emory's affidavit could not be excluded on the grounds assigned because Fed.R.Evid. 705 permitted Dr. Emory to give his opinion without prior disclosure of the underlying facts and data. Boyd contends that the district court

---

[5]Dr. Emory's affidavit, in pertinent part, stated: "[B]ased upon my review of the records and my examination of Mr. Boyd, it is my professional opinion that Mr. Boyd's health condition rendered him unable to perform his job at State Farm, and in fact left him disabled. Continued work at State Farm would have increased his health problems. In my professional opinion, the only solution to Mr. Boyd's medical condition would have been a leave of absence from State Farm. At a minimum, Mr. Boyd required a leave of absence to obtain treatment from his condition."

11

was required to permit Dr. Emory to supplement his opinion if the court deemed the disclosure of facts, data and reasons necessary to decide the motion for summary judgment.

(2)

With respect to expert testimony offered in the summary judgment context, the trial court has broad discretion to rule on the admissibility of the expert's evidence and its ruling must be sustained unless manifestly erroneous. <u>Christophersen v. Allied-Signal Co.</u>, 939 F.2d 1106, 1109 (5th Cir. 1991) (en banc). We have previously rejected the argument that, in the context of summary judgment, Fed.R.Evid. 705 does not require an expert's affidavit to contain factual support for the opinion expressed therein. <u>Slaughter v. Southern Talc Co.</u>, 919 F.2d 304, 307 n.4 (5th Cir. 1990). For the purposes of summary judgment under Fed.R.Civ.P. 56 (e), an expert affidavit must include materials on which the expert based his opinion, as well as an indication of the reasoning process underlying the opinion.

It is against this backdrop that we decide the issue before us. We need not address State Farm's argument that Dr. Emory's opinion is "after-the-fact," because notwithstanding when the opinion was made, it is insufficient to create an issue of fact as to whether Boyd suffered a serious health condition under the FMLA. The opinion offers nothing more than the unsupported conclusion that Boyd's medical condition left him "unable to perform his job." It is a well established rule that without more than his

12

credentials and a subjective opinion, an expert's testimony that a medical condition simply "is so." is not admissible.  Hayter v. City of Mount Vernon, No. 98-40071, slip op. at 5597 (5th Cir. Sept. 21, 1998) (citations omitted).  The district court did not commit manifest error in rejecting the affidavit.

B

(1)

Boyd also contends that his termination violated the FMLA because State Farm failed to wait fifteen days after its written request for medical certification to terminate him.  Boyd based his claim on 29 C.F.R. § 825.305(b), which states in pertinent part:

> "...[T]he employee must provide the requested certification to the employer within the time frame requested by the employer (which must allow at least 15 calendar days after the employer's [written] request), unless it is not practicable under the particular circumstances to do so despite the employee's diligent good faith efforts."

State Farm counters that because Boyd knew of the medical certification requirement and had made numerous attempts to comply with the FMLA, the fifteen-day allowance was not required.  The district court agreed and held that since Boyd had answered State Farm's written request for medical certification the issue of whether Boyd's termination in less than fifteen days violated the FMLA was moot.

(2)

We agree that a fifteen-day allowance is not required in this case.  State Farm provided Boyd a copy of its FMLA policy, which he

13

reviewed immediately before requesting leave from work. Moreover, State Farm urged Boyd several times by phone to comply with the FMLA medical certification requirement. In response to these requests Boyd submitted a total of three doctors' notes, none of which diagnosed his absence as medically required. Thus, it is clear that before Boyd was terminated, he had been given more than adequate notice of the FMLA certification requirement and had made several attempts to comply with the Act. Next, State Farm sent its written notice, to which Boyd responded with yet another physician's note on September 11, 1995. This note also failed support Boyd's claim that his absence from work was medically necessary.

The regulation at issue, 29 C.F.R. 825.305(b), simply provides that an employee must be allowed a minimum of fifteen days to respond to an employer's written request for medical certification. Here, Boyd submitted the medical information in approximately five days after he received State Farm's written request, and consequently, did not need the full fifteen days in which to respond. In such situations, we hold as a matter of law, that when an employee submits medical information in response to an employer's written request, 29 C.F.R. 825.305(b) is no longer implicated and the employer is not required to wait fifteen days before taking action on the employee's request for medical leave. The district court appropriately regarded the issue as moot under the circumstances presented here. The district court's grant of

14

summary judgment on the FMLA claim in favor of State Farm is AFFIRMED.

V

For the aforementioned reasons, the judgment of the district court is hereby

A F F I R M E D.