Douglas Scott GEEN, Petitioner-Respondent,

v.

LABOR AND INDUSTRY REVIEW COMMISSION,
Respondent,

STOUGHTON TRAILERS, INC., Respondent-Appellant.†

Court of Appeals

*No. 01–2713. Submitted on briefs March 14, 2002.—Decided
October 10, 2002.*

2002 WI App 269

(Also reported in 654 N.W.2d 1.)

† Petition to review denied 1-21-03.

500

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Amy O. Bruchs* and *Christine Cooney Mansour* of *Michael Best & Friedrich LLP*, Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Brett C. Petranech* of *Kelly & Petranech LLP*, Madison.

Before Vergeront, P.J., Roggensack and Deininger, JJ.

¶ 1. DEININGER, J. Stoughton Trailers, Inc. appeals a circuit court order which reversed a determination by the Labor and Industry Review Commission that Stoughton did not discriminate against its employee, Douglas Geen. Stoughton terminated Geen's employment following a series of absences, the last two of which were disability-related. Stoughton claims the commission correctly determined, first, that Stoughton did not terminate Geen because of his disability; and second, that even if Stoughton did so, it had first attempted to reasonably accommodate Geen's disability.

¶ 2. We conclude the commission did not resolve the issue of whether Stoughton terminated Geen because of his disability, and further, the commission failed to consider applicable law (the federal Family and Medical Leave Act) in determining whether Stoughton reasonably accommodated Geen's disability. Accordingly, we modify the circuit court's order and direct that the matter be remanded to the commission for further proceedings consistent with this opinion.

## BACKGROUND

¶ 3. Stoughton, a manufacturer of semi-trailers, has a "no fault" attendance policy. The policy mandates termination of any employee who accumulates six "occurrences," defined as any absence, early departure, or tardiness occurring on a scheduled workday. The policy excepts certain absences from being counted as "occurrences," including "[a]bsences meeting State and Federal Family and Medical Leave Laws."

¶ 4. Geen worked as an assembler at Stoughton. By early December 1996, Geen had accumulated 4.5 occurrences, none of which were disability-related.

502

From mid-December 1996 through early January 1997, Geen was absent from work due to migraine headaches. During his absence, Stoughton sent Geen a letter that stated in part:

> If you would like this medical leave to be considered as a family/medical leave, you must complete the attached Department of Labor Certification form and return it to the Stoughton Trailers Human Resources Department no later than 15 days from the date of this letter. If approved, you will not receive an occurrence for the portion of your leave that falls under the family/medical leave law.

¶ 5. The letter enclosed a certification form issued by the U.S. Department of Labor pursuant to the "Family and Medical Leave Act of 1993" (FMLA), a federal act[1] intended, among other things, "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2). As summarized in the letter sent to Geen, federal FMLA regulations require employers to allow employees at least fifteen calendar days to provide medical certification to support FMLA leave, starting from the date of the employer's request for medical certification. 29 C.F.R. § 825.305(b).[2]

¶ 6. Upon returning to work in early January 1997, Geen gave Stoughton copies of several prescriptions as well as a note from his doctor stating that Geen

---

[1] We will employ the acronym FMLA in the remainder of this opinion to refer to the federal Family and Medical Leave Act, 29 U.S.C. §§ 2601–54. Wisconsin has enacted similar provisions, *see* WIS. STAT. § 103.10 (1999–2000), but the state law is not implicated in this appeal. All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[2] Congress authorized the Secretary of Labor to issue regulations needed to carry out the provisions of the FMLA. *See* 29 U.S.C. § 2654.

had been treated for headaches and that he could return to work. However, Geen did not return the FMLA certification form. Under Stoughton's employment policy, if an employee verifies that an absence was illness-related but fails to return the FMLA certification form, Stoughton counts the absence as only one "occurrence," regardless of its actual length. Thus, Stoughton assessed Geen with one "occurrence" for his multiple-week absence, bringing his total to 5.5 occurrences.

¶ 7. Geen again suffered from migraine headaches from Friday, January 24, 1997 through Tuesday, January 28, 1997, missing a total of three workdays. On the morning of each workday, Geen telephoned Stoughton and reported that he could not work due to migraine headaches or doctor appointments related to these headaches. Upon his return to work on January 29, 1997, Geen informed Stoughton's human resources administrator that he needed medical leave for the absences related to his migraine headaches. The administrator responded by handing Geen a letter containing the same request for FMLA certification quoted above (see ¶ 4), as well as another FMLA certification form.

¶ 8. Over the next two days, Geen visited his doctor twice and provided Stoughton with doctor's notes stating that he was being evaluated for migraines, that he was unable to work for two days of his three-day absence,[3] and that he could return to work without restrictions. Geen did not return the FMLA certification form, however. On January 31, 1997, Stoughton terminated Geen on the grounds that his medical

---

[3] The record is unclear as to why Geen's doctor did not excuse all three days of his late-January migraine-related absence.

documentation did not excuse him for one of the days of his late-January absence, causing his "occurrence" total to increase to 6.5, thereby exceeding the 6.0 occurrence maximum.[4]

¶ 9. Geen protested, claiming that his doctor had stated that, due to the difficulty of evaluating Geen's headaches and the press of business, he would be unable to provide additional documentation for at least a week. Stoughton responded by informing Geen that he could appeal his termination to Stoughton's Attendance Review Board by submitting a letter and any medical documentation to the board within three working days from his termination date. Geen timely submitted a letter explaining that he was being evaluated by a doctor for migraine headaches; however, he did not supply any medical documentation or the FMLA certification form. The board rejected Geen's appeal.

¶ 10. Geen subsequently filed a complaint with the Department of Workforce Development, Equal Rights Division, alleging that Stoughton had discriminated against him by terminating his employment because of his disability and failing to reasonably accommodate his disability. An administrative law judge ruled that: (1) Geen had a disability as defined under

---

[4] Immediately prior to his late-January migraine-related absence, Geen took one, non-illness-related vacation day. By mistake, Stoughton recorded the absence as a day of FMLA leave and accordingly did not charge Geen with an "occurrence." At some point after Geen's termination, Stoughton recorded the day as a non-excused absence warranting an "occurrence." Regardless of how Stoughton ultimately characterized this absence, the fact remains that on the date of Geen's termination (January 31, 1997), Stoughton terminated Geen on the basis that he lacked medical documentation for one day of his late-January migraine-related absence.

Wisconsin law; (2) Stoughton terminated Geen's employment "in part because of that disability"; and (3) Stoughton failed to reasonably accommodate his disability. The judge ordered Stoughton to reinstate Geen and to pay his back wages, costs, and attorney fees.

¶ 11. Stoughton appealed to the Labor and Industry Review Commission. The commission said in its decision that it was "reluctant to hold that the termination was 'because of' Geen's disability" because he had already accumulated 4.5 "occurrences" prior to his disability-related absences. Although it deemed whether Stoughton had fired Geen "because of" his disability a "serious question," the commission declined to answer it in light of its conclusion that Stoughton had, in any event, reasonably accommodated Geen's disability by providing Geen "with the opportunity to avoid being assessed 'occurrences' for his disability-caused periods of absence by filling out FMLA leave paperwork."

¶ 12. Consistent with this analysis, the commission arrived at the following Conclusions of Law:

3. Complainant [Geen] is an individual with a disability within the meaning of Wis. Stat. § 111.32(8).

4. Complainant's disability (migraine headaches) was reasonably related to his ability to adequately undertake the job-related responsibilities of his employment with Respondent within the meaning of Wis. Stat. § 111.34(2)(a).

5. Respondent did not refuse to reasonably accommodate Complainant's disability within the meaning of Wis. Stat. § 111.34(1)(a).

6. Respondent did not discriminate against Com-

plainant because of disability within the meaning of Wis. Stat. § 111.34 when it terminated his employment.

¶ 13. Geen sought judicial review of the commission's decision and order in Dane County Circuit Court. The circuit court affirmed Conclusions of Law Nos. 3 and 4, but reversed Nos. 5 and 6. The court based its reversal on its conclusion that Stoughton failed to reasonably accommodate Geen's disability because it terminated Geen prior to the end of the fifteen-day FMLA certification period. The circuit court remanded the case to the commission "with directions to implement the ALJ order."

¶ 14. Stoughton appeals the circuit court's order, asking that we reverse it and reinstate the commission's order dismissing Geen's complaint. Geen responds, seeking to preserve the trial court's order. The commission has not participated in the appeal.

## ANALYSIS

¶ 15. Geen's claim of discrimination on account of disability involves three essential elements of proof. *See Racine Unified Sch. Dist. v. LIRC*, 164 Wis. 2d 567, 598, 476 N.W.2d 707 (Ct. App. 1991). First, Geen must establish that he has a disability within the meaning of Wisconsin's fair employment law.[5] *Id.* at 598. Second, Geen must prove that Stoughton terminated him be-

---

[5] WISCONSIN STAT. § 111.32(8) defines an individual with a disability as one who:

(a) Has a physical or mental impairment which makes achievement unusually difficult or limits the capacity to work;

(b) Has a record of such an impairment; or

(c) Is perceived as having such an impairment.

cause of his disability. *Id.* at 601. Third, if Geen proves these two elements, the burden then shifts to Stoughton to justify the termination. *Id.* Stoughton may do so by proving that Geen's disability is "reasonably related" to his ability to do his job *and* that either: (1) Stoughton reasonably accommodated Geen's disability prior to his termination;[6] or (2) any accommodation would have posed a hardship on its business. WIS. STAT. § 111.34(1)(b), (2)(a).

¶ 16. The parties have narrowed the issues through various concessions. Stoughton does not dispute that Geen's migraine headaches are a disability under Wisconsin's fair employment law, and Geen acknowledges that his disability was reasonably related to his ability to do his job. Additionally, Stoughton does not contend that a reasonable accommodation of Geen's disability would have posed a hardship on its business. Thus, only two issues remain in dispute: (1) whether Stoughton terminated Geen's employment "because of" his disability; and if so, (2) whether Stoughton reasonably accommodated Geen's disability prior to his termination.

¶ 17. The parties briefed these issues to the commission. As we have noted, the commission equivocated on the first issue (stating that it was "reluctant" to hold that Stoughton terminated Geen because of his disability, but reaching no conclusion on the question). The

---

[6] The commission has held that an employer may satisfy the reasonable accommodation requirement by "offer[ing] an accommodation which effectively eliminates the conflict between the handicapped employee's abilities and the job requirements, and which reasonably preserves the affected employee's employment status." *Norton v. City of Kenosha*, ERD No. 9052433 (LIRC, Mar. 16, 1994).

508

commission decided the reasonable accommodation issue in Stoughton's favor. We independently review the commission's decision, not that of the circuit court. *Wal-Mart Stores, Inc. v. LIRC*, 2000 WI App 272, ¶ 8, 240 Wis. 2d 209, 621 N.W.2d 633, *review denied*, 2001 WI 15, 241 Wis. 2d 210, 626 N.W.2d 808 (Wis. Feb. 7, 2001) (No. 99–2632). Because the commission viewed the reasonable accommodation determination as dispositive, we address it first.

## I.

¶ 18. The commission's "reasonable accommodation" determination is a conclusion of law entitled to great weight deference from a reviewing court.[7] *See Target Stores v. LIRC*, 217 Wis. 2d 1, 13, 576 N.W.2d 545 (Ct. App. 1998). Under the "great weight" standard, we must uphold the commission's decision unless it is unreasonable. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 661, 539 N.W.2d 98 (1995). A decision is unreason-

---

[7] When reviewing an agency's conclusion of law, there are three possible levels of deference: great weight, due weight, or de novo. *American Mfrs. Mut. Ins. Co. v. Hernandez*, 2002 WI App 76, ¶ 11, 252 Wis. 2d 155, 642 N.W.2d 584. We give great weight deference to the commission's reasonable accommodation determination in light of: (1) the commission's legislatively-mandated duty to adjudicate appeals of matters under the Wisconsin fair employment law, including complaints for disability discrimination; (2) the commission's experience and expertise in interpreting the reasonable accommodation requirement of Wis. Stat. § 111.34(1)(b); (3) the need for greater uniformity and consistency in interpreting this requirement; (4) the factual issues intertwined with the reasonable accommodation determination; and (5) the value and policy judgments involved in this determination. *Target Stores v. LIRC*, 217 Wis. 2d 1, 13, 576 N.W.2d 545 (Ct. App. 1998).

able if it directly contravenes the words of the statute, is clearly contrary to legislative intent, or lacks a rational basis. *Id.* at 662.

¶ 19. We conclude that the commission's reasonable accommodation determination in this case may have contravened the legislative intent behind both Wis. Stat. § 111.34(1)(b) and the FMLA. "[T]he purpose of reasonable accommodation [under Wis. Stat. § 111.34(1)(b)] is to enable employees to adequately undertake job-related responsibilities." *Target Stores*, 217 Wis. 2d at 17. Similarly, Congress enacted the federal Family and Medical Leave Act in 1993 to, among other things, "entitle employees to take reasonable leave for medical reasons . . . [and] to accomplish [this] purpose[] . . . in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(2), (3). The commission's determination may contravene these purposes if it is read so as to suggest that an employer may be found to have reasonably accommodated an employee's disability notwithstanding what could be construed as the employer's violation of FMLA regulations.

¶ 20. The FMLA applies to private employers who employ at least fifty employees for each working day during at least twenty calendar workweeks per year. 29 C.F.R. § 825.104(a). The federal act applies to employees who: (1) have worked for an employer covered by the act for at least twelve months; (2) have worked for at least 1,250 hours during the twelve-month period immediately preceding the start of the leave; and (3) are employed at a worksite where at least fifty employees are employed by the employer within seventy-five miles of that worksite. 29 C.F.R. § 825.110(a).

¶ 21. A covered employee may take up to twelve weeks of leave for, among other reasons, a "serious health condition that makes the employee unable to perform the functions" of his or her job. 29 U.S.C. § 2612(a)(1)(D). One of the ways in which an employee may prove a "serious health condition" is to show that the employee was: (1) incapacitated (i.e., unable to work or perform other regular daily activities) due to the serious health condition for more than three consecutive calendar days; (2) seen at least once by a doctor; and (3) prescribed a course of medication, such as an antibiotic. 29 C.F.R. § 825.114(a)(2)(i), (B); § 825.114(b). If an employee qualifies an absence as being caused by a "serious health condition," the employer may not count the leave under a "no-fault" attendance policy. 29 C.F.R. § 825.220(c).

¶ 22. The FMLA appears to be applicable to the present facts, and Stoughton does not argue otherwise. Stoughton employs more than fifty full-time employees and Geen worked full-time at Stoughton for approximately eight years prior to the absences at issue. Geen's migraine headaches during his final absence seemingly qualify as a "serious health condition" under the FMLA because Geen was apparently incapacitated by migraine headaches from January 24, 1997 through January 28, 1997 (a period of more than three consecutive calendar days); he had at least one doctor appointment during this period; and he was prescribed medication for his pain. *See* 29 C.F.R. § 825.114(a)(2)(i), (B); § 825.114(b); *see also* § 825.114(c) (listing illnesses too insignificant for coverage under the FMLA, migraine headaches not being among them).

¶ 23. An employee who suffers from a serious health condition may obtain FMLA leave upon notice to the employer of the need for leave. When the need for

leave is not foreseeable, as in the case of a sudden onset of an illness, the employee must give notice to the employer "as soon as practicable." 29 C.F.R. § 825.303(a). An employee may give notice verbally, and he or she "need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." 29 C.F.R. § 825.303(b). Geen called Stoughton the morning of each workday during his final absence to report that he could not work due to migraine headaches, and he stated upon his return to work that he needed to take medical leave for his absences. *See Brannon v. Oshkosh B'Gosh, Inc.*, 897 F. Supp. 1028, 1033, 1039 (M.D. Tenn. 1995) (Employee gave adequate notice of need for FMLA leave by informing employer of need for leave in telephone calls on morning of each absent workday and by informing supervisors of need for leave upon return to work.).

¶ 24. In response to an employee's request for leave, an employer may request that the employee provide medical certification of the need for leave. 29 C.F.R. § 825.305(a). The employer's request for medical certification typically must be in writing, and it must inform the employee of the consequences of a failure to provide certification. 29 C.F.R. § 825.305(a), (d). Of primary significance to the present dispute is the requirement that an employer must give an employee "at least fifteen calendar days after the employer's request" to provide the certification, and must allow additional time if "it is not practicable under the particular circumstances" for the employee to return the form within that time period "despite the employee's diligent, good faith efforts." 29 C.F.R. § 825.305(b). Moreover, if the employee provides inadequate certification, the employer must give the employee a "reasonable opportunity to cure" any deficiencies. 29 C.F.R. § 825.305(d).

512

While neither the FMLA nor the regulations define a "reasonable opportunity to cure," courts have held that "termination is not an appropriate response for an inadequate certification." *Marrero v. Camden County Bd. of Social Servs.*, 164 F. Supp. 2d 455, 466 (D.N.J. 2001).

¶ 25. Thus, the record suggests that Stoughton may not have fully complied with the FMLA following Geen's second disability-related absence, a circumstance the commission did not address in its decision. Stoughton fired Geen two days after giving him a letter requesting that he provide medical certification for his second disability-related absence. Geen's termination thus occurred well within the fifteen-day certification period applicable to the second disability-related absence. *See Rager v. Dade Behring, Inc.*, 210 F.3d 776, 778 (7th Cir. 2000) (explaining that the FMLA requires employer to give employee at least fifteen calendar days in which to submit certification, and that the period starts when an employee receives notice that such documentation is required by a particular date and of consequences of failure to timely submit documentation). Although Stoughton may justifiably have viewed the doctor's notes Geen provided as inadequate for FMLA purposes, Stoughton was required under 29 C.F.R. § 825.305(d) to give Geen a "reasonable opportunity" to cure any inadequacies. By terminating Geen two days after first formally requesting medical certification for the second disability-related absence, Stoughton arguably failed to provide Geen with the requisite opportunity to cure. *See Marrero*, 164 F. Supp. 2d at 466 ("termination is not an appropriate response for an inadequate certification").

¶ 26. Stoughton, however, advances several reasons why the record shows that it did not violate the

FMLA. We are not persuaded. Stoughton first argues, citing *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326 (5th Cir. 1998), that Geen's submission of incomplete medical documentation waived any obligation on its part to allow the fifteen-day certification period to elapse before taking action on Geen's medical leave request. This argument, however, shares a flaw with the *Boyd* decision: neither Stoughton's argument nor *Boyd* address 29 C.F.R. § 825.305(d), which expressly requires an employer to "provide the employee a reasonable opportunity to cure" any certification that the employer deems inadequate. Although it is true that neither the FMLA nor the regulations define what constitutes a "reasonable opportunity to cure," it seems unlikely that the Department of Labor intends that an employee's opportunity to cure an inadequate certification should expire before the end of the mandatory fifteen-day period for submitting a certification in the first instance. We therefore do not view *Boyd* as controlling.

¶ 27. Stoughton next argues that its failure to provide Geen with the full fifteen-day certification period following his second disability-related absence is irrelevant because it allowed Geen the full fifteen days to return a certification form concerning his first disability-related absence. Stoughton cites no authority for the proposition that Geen's failure to submit medical certification related to his first disability-related absence somehow constitutes a waiver of his right to qualify any future disability-related absences as FMLA leave. We therefore reject Stoughton's waiver argument as well.

¶ 28. Stoughton also asserts that Geen was actually requesting "intermittent leave" under the Act, and that in the case of intermittent leave, "[t]here is no

requirement" that Stoughton was required to give Geen a second written request for medical certification. Thus, according to Stoughton, its written request for medical certification following Geen's second disability-related absence was a "generous action" that "did not require it to wait yet another 15 days for Geen to submit the medical certification." Again we disagree.

¶ 29. The Act allows employees to take "intermittent leave" (defined as leave taken in separate blocks of time due to a single qualifying reason (29 C.F.R. § 825.203(a)), but this type of leave appears to be intended for employees who have a predictable, regularly recurring need for leave. *See* 29 C.F.R. § 825.117 ("Employees needing intermittent FMLA leave . . . must attempt to schedule their leave so as not to disrupt the employer's operations"); *see also* 29 C.F.R. § 825.203(c)(1) ("Examples of intermittent leave would include leave taken on an occasional basis for medical appointments, or leave taken several days at a time spread over a period of six months, such as for chemotherapy."). Although Geen knew that he occasionally suffered from migraine headaches, he could not have foreseen the particular dates on which he would be absent due to his migraine headaches. Geen's two disability-related absences do not therefore appear to fall under the category of "intermittent leave." In any event, the regulations provide that when an employer chooses to request medical certification, it "*must* allow at least 15 calendar days after the request" for the employee to return the certification. 29 C.F.R. § 825.305(b) (emphasis added).

¶ 30. Finally, Stoughton argues that "Geen should be deemed to have waived" any argument concerning the fifteen-day certification period. *See State v. Outag-*

515

*amie County Bd. of Adjustment*, 2001 WI 78, ¶ 55, 244 Wis. 2d 613, 628 N.W.2d 376 (In order to preserve an issue for judicial review, a party must raise it before the administrative agency.). We conclude, however, that Geen preserved this issue for review by briefing it to the commission. Specifically, Geen argued in his brief to the commission that "[a]ccording to federal law, Mr. Geen had a minimum of 15 days to get [medical certification] in, and more time if that was reasonable under the circumstances (see 29 C.F.R. 825.305(b))." (Footnote omitted.) Geen further argued that Stoughton had "fail[ed] to explain how firing an employee two days into the statutory fifteen day period" could constitute reasonable accommodation. Geen adequately preserved the issue for the circuit court's and our review.

¶ 31. In summary, we conclude that the commission's determination that Stoughton reasonably accommodated Geen's disability may be unreasonable because it appears to conflict with the legislative intent underlying the FMLA and WIS. STAT. § 111.34(1)(b). The commission determined that Stoughton reasonably accommodated Geen's disability by giving him the opportunity to have his disability-related absences declared medical leave under the FMLA, but it did not consider all of the requirements the FMLA and related regulations place on employers.

¶ 32. If an agency erroneously interprets a provision of law, we may set aside the agency action and "remand the case to the agency for further action under a correct interpretation." WIS. STAT. § 227.57(5). Alternatively, we may "modify the agency action if . . . a correct interpretation compels a particular action." *Id*. We reject the latter alternative for two reasons. First, it is conceivable that the commission could conclude after a full consideration of FMLA requirements that

Stoughton nonetheless reasonably accommodated Geen's disability within the meaning of Wisconsin's Fair Employment Act (WFEA). Because the commission did not address the possible FMLA violation in its present decision, we conclude it should be given the opportunity to do so on remand. Furthermore, as we discuss below, the ultimate disposition of Geen's claim may turn on another issue which the commission did not address.

## II.

¶ 33. The commission did not complete the inquiry which preceded its consideration of the reasonable accommodation issue: Did Stoughton terminate Geen's employment "because of" his disability? An employer's motivation for terminating an employee is often a question of fact. *See, e.g., Hoell v. LIRC*, 186 Wis. 2d 603, 614, 522 N.W.2d 234 (Ct. App. 1994) (Whether employer terminated employee because of her pregnancy or because of her poor job performance "presents a question of ultimate fact."). Here, the factual circumstances of Geen's termination are not in dispute. Stoughton terminated Geen because he exceeded the maximum number of absences allowed under Stoughton's attendance policy.

¶ 34. A dispute exists, however, concerning, in the commission's words, "at . . . [what] point the application of a 'no-fault' attendance policy to a person who is experiencing absences caused by a disability, will constitute taking action against that person 'because of' the disability." We conclude that on undisputed facts this question becomes one of law. *See Dorr v. Sacred Heart Hosp.*, 228 Wis. 2d 425, 449, 597 N.W.2d 462 (Ct. App.

1999) ("Once the facts are determined, whether the facts fulfill a particular legal standard is a question of law."). The commission ruminated on the question but did not decide it.[8] The commission's counsel explained in a brief to the trial court:

> [A]lthough the Commission was "reluctant" to find that Geen's termination was "because of" his disability when only two of the 6.5 "occurrences" resulting in his discharge were related to his disability, *the Commission made no finding of fact or conclusion of law that Geen*

---

[8] The commission said in its decision "that there is a serious question as to whether it would be reasonable to say" that a termination under Stoughton's attendance policy was " 'because of' the person's disability" where the first two of six absences, instead of the last two as here, were disability-related. It also concluded that whether Geen's termination was because of his disability was "an equally serious question." The commission went on to note its prior decisions which have touched on the issue, concluding that "there is no bright-line rule" regarding when a "no-fault" attendance policy becomes discriminatory on account of disability-related absences.

Stoughton argues that the commission resolved the "termination because of disability" question in its favor by stating in its Conclusion of Law No. 6: "Respondent did not discriminate against Complainant because of disability within the meaning of Wis. Stat. § 111.34 when it terminated his employment." When viewed in context (see ¶ 12), however, this conclusion is nothing more than the necessary final determination flowing from the commission's previous conclusion (No. 5) that Stoughton "did not refuse to reasonably accommodate [Geen]'s disability." *See id.* Conclusion of Law No. 6 does *not* say that Stoughton did not terminate Geen's employment because of his disability, a question it expressly left open. The commission's determination that Stoughton had not discriminated against Geen because of his disability was based solely on its conclusion that Stoughton had reasonably accommodated Geen's disability by allowing him to qualify his absences as medical leave.

*was not discharged "because of" his disability within the meaning of Wis. Stat. §§ 111.321 and 111.322.* The Commission assumed that Geen's discharge was because of his disability and therefore proceeded to conclude that Geen was not discriminated against because of disability within the meaning of Wis. Stat. § 111.34 because Geen's disability was reasonably related to his ability to adequately undertake his job-related responsibilities, and because Stoughton Trailers did not refuse to reasonably accommodate his disability.

(Emphasis added.)

¶ 35. "Courts . . . frequently refrain from substituting their interpretation of a statute for that of the agency charged with the administration of a law." *Lisney v. LIRC*, 171 Wis. 2d 499, 505, 493 N.W.2d 14 (1992). We choose to exercise such restraint by giving the commission the first opportunity to decide the question of whether a termination for six accumulated absences, the last two of which were disability-related, constitutes termination "because of" a disability. Although this question is one of law, it is intertwined with value and policy judgments, and its resolution by the commission will benefit from the commission's expertise in matters relating to employment, and from its experience in interpreting and administering the WFEA. *See Wal-Mart Stores, Inc.,* 2000 WI App 272 at ¶ 28 (inviting commission to address on remand a question "of some importance" involving "significant policy implications").[9]

---

[9] *See also Wisconsin Bell, Inc. v. DOR,* 164 Wis. 2d 138, 144, 473 N.W.2d 587 (Ct. App. 1991) ("[W]here an issue presented to the court involves fact-finding or policymaking within the agency's field of expertise or administration—such as the application of a law administered by the agency to a specific set of facts—'the agency should be given the first review unless there

## CONCLUSION

¶ 36. For the reasons discussed above, we conclude, as did the circuit court, that the commission's order dismissing Geen's complaint must be set aside. We modify the circuit court's disposition, however, as follows: In place of the direction to "implement the ALJ order," the matter shall be remanded to the commission for further proceedings consistent with this opinion. On remand, the commission shall consider, to the extent it is necessary to do so, either or both of the following issues: (1) whether on the present facts Stoughton terminated Geen's employment because of his disability; and (2) whether the FMLA or regulations enacted thereunder affect Stoughton's claim that it reasonably accommodated Geen's disability, and if so, how. In revisiting these issues, the commission may elect to take additional evidence in order to provide a complete record on the issues.

*By the Court.*—Order modified, and as modified, affirmed.

is some valid reason for the court to intervene and exercise its jurisdiction.' " (discussing "the primary jurisdiction rule") (citation omitted).).