United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 3, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-50642
Summary Calendar

_____

In the Matter of: ERIC RED

                                                                          Debtor,

------------------------------------------

ERIC RED,

                                                                          Appellant,

versus

WILLA BAUM; NILDA ROOS,

                                                                          Appellees.

_____

Appeal from the United States District
Court for the Western District of Texas
(No. A-03-CV-160-SS)

_____

Before JONES, BENAVIDES, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

   Debtor Eric Red ("Red") appeals the district court's order affirming the bankruptcy

_____

   [*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

court's denial of dischargability of certain potential debts owed to Willa Baum and Nilda Roos (the "Creditors"). Because we find that the district court did not err in upholding the bankruptcy court's determination that those debts qualify as exceptions to discharge under 11 U.S.C. § 523(a)(6), we affirm.

## I. FACTS AND PROCEEDINGS

On May 31, 2000, in Los Angeles, California, Red was involved in an automobile collision. At approximately 6:00 p.m., Red was driving a Jeep that rear-ended a white Honda which apparently had been stopped for some time at a traffic light on Wilshire Boulevard. Red's car proceeded to push the Honda into the intersection, and then veered off to the left, crossed two lanes of oncoming traffic, and crashed into a bar filled with people, killing two individuals and injuring several others. After crashing into the bar, Red picked up a piece of broken glass and attempted to commit suicide by slashing his own neck, but he did not cut any arteries and was then restrained by several onlookers.

The facts surrounding the collision were hotly contested. Red claimed that he suffered from an episode of syncope,[1] and that he was unconscious from the time his Jeep hit the Honda until the time his Jeep crashed into the bar. Red also maintained that he had suffered several prior episodes of syncope, though neither his ex-wife nor his doctors were aware of the incidents. The Creditors, relatives of the decedents, argued that the collisions,

---

[1] Syncope is defined as "[a] brief loss of consciousness caused by a temporary deficiency of oxygen in the brain; a swoon." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, FOURTH EDITION, available at http://dictionary.reference.com/search?q=syncope.

which occurred on the one year anniversary of Red's failed marriage to his ex-wife, were the result of Red's depressed mental state caused by distress over personal and financial problems. The parties presented conflicting eyewitness testimony concerning whether Red was alert and upright, or slumped-over and unconscious when his Jeep careened into the bar.

The Creditors filed wrongful death claims against Red in California. Red briefly moved to Austin, Texas, and there filed for bankruptcy protection. The bankruptcy court, after a trial, found Red's testimony to be unreliable, agreed with the Creditors that Red intentionally drove into the bar, and held that the potential debts owed to the Creditors qualify as exceptions to discharge under 11 U.S.C. § 523(a)(6). The district court affirmed the bankruptcy court's decision on similar grounds. Red timely appeals.

## II. STANDARD OF REVIEW

This Court "review[s] the decision of the district court by applying the same standard to the bankruptcy court's findings of fact and conclusions of law as the district court applied. A bankruptcy court's findings of fact are subject to clearly erroneous review, while its conclusions of law are reviewed de novo." In re Jack/Wade Drilling, Inc., 258 F.3d 385, 387 (5th Cir. 2001). "The interpretation of Section 523(a)(6) is a question of law and is reviewed de novo." In re Williams, 337 F.3d 504, 508 (5th Cir. 2003).

"We apply an abuse of discretion standard when reviewing a trial court's decision to admit or exclude expert testimony. The district court's ruling will be sustained unless manifestly erroneous." Tyler v. Union Oil Co. of California, 304 F.3d 379, 392 (5th Cir.

3

2002) (citing Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137 (1999) and Boyd v. State Farm Ins. Cos., 158 F.3d 326, 331 (5th Cir.1998)).

## III. DISCUSSION

A.  Whether the facts as found by the bankruptcy court support an exception to discharge under § 523(a)(6).

Section 523(a)(6) provides no discharge for any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). This Court has interpreted "willful and malicious injury" to mean that the debtor must be aware that the act will result in "either an objective substantial certainty of harm or a subjective motive to cause harm." In re Miller, 156 F.3d 598, 606 (5th Cir. 1998). Because debtors generally deny that they had a subjective motive to cause harm, most cases that hold debts to be non-dischargable do so "under the objective standard, if [the debtor's] acts were substantially certain to result in injury . . . ." Id. at 604.

Red argues that the bankruptcy court's finding that he intentionally drove into the bar does not support the legal conclusion that the debts are non-dischargable under § 523(a)(6). That finding, he claims, does not demonstrate an intent to harm anyone. While the bankruptcy court's finding cannot establish Red's subjective intent, it does demonstrate an objective substantial certainty of injury. The bankruptcy court found that Red intentionally drove into the bar at 6:00 p.m.—happy hour—a time when one would expect a bar to be crowded. Red himself admitted during the trial that if a person were to drive into a crowded restaurant he "would know that [he] would cause catastrophic injuries or

4

death inside the restaurant." Intentionally driving into a bar during happy hour creates an objective substantial certainty of injury.

Red relies on this Court's decision in In re Delaney, 97 F.3d 800 (5th Cir. 1996), to insulate himself from a conclusion of willfulness; however, his reliance is unwarranted. In Delaney we held that debts incurred when a debtor accidentally fired a gun while tapping the gun on the windshield of a car were dischargable. Id. at 802-03. We explained that:

> Here, [the debtor] unquestionably acted intentionally when he loaded the shotgun, took it with him to the confrontation with [the creditor], and, with his finger on the trigger, twice tapped the barrel of the gun on the windshield of the car to get [the creditor's] attention. In contrast, however, the firing of the gun was neither deliberate nor intentional; on the contrary, it was wholly unintentional, even though possibly not wholly unforeseeable. . . . [T]he injury was not "willful and malicious" on the part of [the debtor]: He neither intended the injury nor intentionally took action that was "substantially certain" to cause the injuries that [the debtor] suffered.

Id. Unlike in Delaney, the bankruptcy court here found that Red did intentionally commit an action—driving into a crowded bar—that was "substantially certain" to cause harm. Under the facts that the bankruptcy court found, discharge was inappropriate under § 523(a)(6).

B.      Whether the bankruptcy court's factual determinations were clearly erroneous.

Red challenges the bankruptcy court's finding that he was conscious and intentionally drove into the bar.[2] Factual findings are not to be disturbed unless the court

_____

[2] This Court will not address the other factual determinations that Red contests (e.g., that Red was filled with "uncontrollable rage" when he drove into the bar) because they are not essential to the bankruptcy court's ultimate conclusion.

of appeals is "left with the definite and firm conviction that a mistake has been made." Otto Candies, L.L.C. v. Nippon Kaiji Kyokai Corp., 346 F.3d 530, 534 (5th Cir. 2003). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts." Anderson v. Bessemer City, 470 U.S. 564, 574 (1985) (citation omitted).

As mentioned supra, the bankruptcy court considered conflicting eyewitness testimony concerning Red's demeanor as his Jeep was speeding into the bar. Several witnesses claimed that he was alert and sitting upright, while others thought that he was hunched over and perhaps unconscious. Additionally, the Creditors' expert, Dr. Thomas Hedge ("Hedge"), a medical doctor, testified that a person experiencing an episode of syncope will have his body go limp and likely be unable to press down on a car's accelerator. However, on cross-examination, Hedge admitted that if a person's body were leaning forward when an episode of syncope occurred, that might create enough pressure on the accelerator to move the car.

Even if we were to agree with Red that it is arguable whether he was conscious, the evidence in the record does not approach that which would be needed to find that the bankruptcy court's determination was clearly erroneous. That court was in the best position to assess witness credibility, and its finding that Red was conscious and intentionally drove into the bar does not leave us with the "definite and firm conviction

6

that a mistake has been made." Otto Candies, 346 F.3d at 534. The bankruptcy court's factual findings were not clearly erroneous.

C.      Whether the bankruptcy court erred in admitting the testimony of the Creditor's expert.

Red finally argues that the bankruptcy court erred in admitting the testimony of the Creditors' expert, Hedge. The trial judge's decision whether to admit expert testimony is reviewed for abuse of discretion. Carroll v. Morgan, 17 F.3d 787, 789 (5th Cir. 1994). "A trial judge sitting without a jury is entitled to greater latitude in the admission or exclusion of evidence. In a bench trial, reversal is only warranted if all of the competent evidence is insufficient to support the judgment, or if it affirmatively appears that the incompetent evidence induced the court to make an essential finding which it otherwise would not have made." Southern Pacific Transp. Co. v. Chabert, 973 F.2d 441, 448 (5th Cir. 1992). Harmless error is not a ground for reversal. See id.

Red's only cognizable claim is that Hedge was not qualified to testify about the effect of an episode of syncope on Red's ability to depress the accelerator pedal. It seems that Hedge's testimony on this issue simply combined his medical knowledge (which is not disputed) with common knowledge about driving a car. The bankruptcy court did not abuse its discretion in admitting this testimony.[3]

---

[3] It is questionable whether the net of Hedge's testimony was harmful to Red. Although Hedge testified that a person suffering an episode of syncope would not be able to press down on the accelerator, he also testified that if a person were leaning forward and suffered an episode of syncope, that person might slump over the steering wheel and his body-weight might depress the accelerator pedal. Excluding Hedge's

Alternatively, if we were to assume that that court did abuse its discretion in admitting Hedge's testimony, such error would have been harmless. Even without this testimony, there was sufficient evidence for the bankruptcy court to find that Red intentionally drove into the bar. Any error associated with the admission of the expert's testimony is therefore harmless.

## IV. CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.

---

testimony would not necessarily have been any more beneficial to Red than to the Creditors.