HUTCHINSON TECHNOLOGY, INC., Petitioner-
Appellant-Petitioner,†

v.

LABOR AND INDUSTRY REVIEW COMMISSION and Susan
Roytek, Respondents-Respondents.

Supreme Court

*No. 02–3328. Oral argument April 27, 2004.—Decided
June 30, 2004.*

2004 WI 90

(Also reported in 682 N.W.2d 343.)

†Motion for Reconsideration Filed 7-19-04.

WILCOX, J., joins.
ROGGENSACK, J., dissents.
PROSSER, J., joins.

For the petitioner-appellant-petitioner there were briefs by *Carol S. Dittmar, Teresa E. O'Halloran* and

*Garvey, Anderson, Johnson, Geraci & Mirr, S.C.,* Eau Claire, and oral argument by *Carol S. Dittmar.*

For the respondent-respondent, Labor and Industry Review Commission, the cause was argued by *David C. Rice,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

For the respondent-respondent, Susan Roytek, there was a brief by *Rose M. Allen, Lisa A. Wiebusch* and *Mudge, Porter, Lundeen & Seguin, S.C.,* Hudson, and oral argument by *Rose M. Allen.*

An amicus curiae brief was filed by *Timothy G. Costello, Brian M. Radloff* and *Krukowski & Costello, S.C.,* Milwaukee, on behalf of Wisconsin Manufacturers & Commerce, Inc., and oral argument by *Timothy G. Costello.*

An amicus curiae brief was filed by *Monica Murphy* and *Wisconsin Coalition for Advocacy,* Milwaukee, on behalf of Wisconsin Coalition for Advocacy.

¶ 1. N. PATRICK CROOKS, J. Petitioner, Hutchinson Technology, Incorporated (HTI), seeks review of a court of appeals' decision, *Hutchinson Technology, Inc. v. LIRC,* No. 02–3328, unpublished slip op. (Wis. Ct. App. Sep. 18, 2003), affirming the decision of the Labor and Industry Review Commission (LIRC), which concluded that HTI discriminated against Susan Roytek (Roytek) on the basis of her disability. LIRC affirmed the decision by the administrative law judge and concluded that Roytek had a disability, as defined by the Wisconsin Fair Employment Act (WFEA), and that HTI failed to provide a reasonable accommodation that would have allowed her to continue her employment with HTI. The circuit court and the court of appeals affirmed LIRC's decision.

¶ 2. We conclude that Roytek is a person with a disability under the WFEA. Roytek met her initial burden of establishing the reasonableness of her proposed accommodations. HTI did not prove that it could not reasonably accommodate Roytek's disability, since it accommodated her disability for eight months. Moreover, HTI did not introduce any evidence that allowing Roytek to continue to work eight-hour shifts at HTI would cause hardship to the business. We are mindful that a business must have the right to set its own employment rules to encourage maximum productivity. We caution, however, that such rules do not exist in a vacuum, but must bend to the requirements of the WFEA. We, therefore, affirm the court of appeals' decision.

I

¶ 3. HTI is a Minnesota based corporation with a manufacturing plant located in Eau Claire, Wisconsin. The Eau Claire manufacturing plant produces suspension assemblies for computer hard disk drives. Since opening, the Eau Claire plant has used four crews to work rotating 12–hour shifts in its production facilities. HTI instituted the 12–hour shift model after studying production efficiency and determining employees' preferences. Employees generally work three days one week and four days the next, with every other weekend off. Thus, over the course of two weeks, an employee works seven 12–hour shifts totaling 84 hours. HTI has occasionally permitted an employee to work less than 12 hours per shift for a job assigned such hours, but these allowances have been temporary in nature.

¶ 4. Roytek began her employment as a production worker in HTI's photoetch department in June 1998. In the photoetch process, a pattern is photo-

graphically imprinted onto stainless steel sheets. The pattern is then etched with a chemical process, cleaned, inspected, sheared, and sent on to the next phase of processing. All of HTI's photoetch operators rotated into four areas during their shifts: inspection, shearing, bookwork, and bay. Each photoetch operator had a primary position in one of these four areas, and the majority of each shift was spent doing the work of such position. In inspection, an operator was required visually to inspect chemically etched steel sheets. Although the job description of the inspection position stated that it required long periods of sitting, adjustable tables were available, in order to permit standing inspection. The shearing position required the feeding of steel sheets into a machine and had to be performed while standing. The bookwork position was a desk job, and a person could stand or sit to perform such tasks. The requirements of the bay position varied. Roytek primarily worked in the inspection position and, at the time she was hired, understood that she would be required to work 12–hour days.

¶ 5. In September 1998, Roytek's personal physician, Paul M. Ippel, M.D. (Ippel), diagnosed Roytek with lower back pain[1] and concluded that she was temporarily unable to work. Roytek returned to work in November 1998, but with some restrictions. Roytek was limited to working six-hour days and prohibited from lifting anything over 20 pounds. In January 1999, Roytek increased her shifts to eight-hour days. At HTI's request Tuenis Zondag, M.D. (Zondag), performed a fitness for work evaluation on Roytek in August 1999. Based on the results of the evaluation, Roytek could

---

[1] Roytek was ultimately diagnosed with degenerative disk disease at L5–S1 with an annular tear at L5–S1.

work steadily on an eight-hour shift, five days per week. However, Roytek was incapable of working 12–hour shifts on a consistent basis. Roytek's last day of work was August 10, 1999, and she went on short-term disability leave beginning August 13, 1999. HTI terminated Roytek's employment on September 11, 1999, when her short-term disability pay ran out.

¶ 6. Roytek filed a complaint with the Equal Rights Division of the Department of Workforce Development (Department), alleging that HTI had discriminated against her on the basis of disability. After Roytek filed her complaint, Ippel informed the Department of further restrictions on Roytek's ability to work. Such restrictions included no sitting for longer than two hours, no static standing, no lifting more than 20 pounds, and no workdays longer than eight hours. While some testimony was presented by HTI before the Administrative Law Judge (ALJ) John L. Brown, presiding at the Department hearing on what these restrictions would mean in terms of performance of certain job functions, the determinations by the ALJ, and by LIRC, focused on the eight-hour day versus the 12–hour day issue.[2] HTI closed its photoetch department at the Eau Claire plant on June 17, 2000.

¶ 7. The ALJ concluded that Roytek had a disability, and that HTI had terminated her employment due to such disability. The ALJ concluded that, although HTI had demonstrated that Roytek's disability prevented her from performing certain job functions, HTI did not demonstrate that it attempted reasonably to accommodate her disability or that such accommodation would impose a hardship upon it. The ALJ con-

---

[2] During oral argument, the restrictions were discussed only in regard to an eight-hour day.

cluded that HTI's evidence was too speculative to conclude that it had met its burden to prove hardship. Although HTI expressed fear that other employees would request reduced hours, that her fellow employees would experience a decline in morale, and that production would suffer, the ALJ concluded that HTI had presented no evidence that any of these scenarios had actually occurred. Thus, the ALJ reasoned that HTI violated the WFEA by terminating Roytek's employment. The ALJ then ordered HTI to reinstate Roytek to a position comparable to the position she had held in the photoetch department, unless Roytek stated that she did not want to be reinstated. The ALJ also ordered HTI to make Roytek whole for the losses of pay and benefits she suffered as a result of her termination.

¶ 8. HTI appealed the ALJ's decision to LIRC. LIRC affirmed the ALJ's decision.[3] HTI sought review of LIRC's decision in circuit court. The Eau Claire County Circuit Court, Judge Benjamin D. Proctor presiding, affirmed LIRC's decision. The court concluded that HTI failed to meet its burden with respect to reasonable accommodation and hardship. HTI appealed.

---

[3] LIRC made only two amendments to the ALJ's decision, regarding attorney fees and the submission of a compliance report, neither of which are material to our review of this case. The dissent erroneously contends that "LIRC went directly to assessing whether HTI had shown a hardship under subsection (1)(b)." Dissent, ¶ 50. Indeed, LIRC addressed the issue of reasonable accommodation when it stated that "there was a reasonable accommodation that could have been provided for [Roytek] which would have enabled her to perform her job notwithstanding her disability, had [HTI] been willing to provide it."

¶ 9. In an unpublished per curiam opinion, Court of Appeals' Judges David G. Deininger, Margaret J. Vergeront, and Paul Lundsten affirmed the circuit court's judgment, stating that Roytek had a disability under Wisconsin's interpretation of "disability" as set forth in Wis. Stat. § 111.32(8)(a) (2001–02).[4] The court further concluded that HTI did not proffer sufficient evidence to support its contention that accommodating Roytek's disability would impose a hardship upon it. Finally, the court concluded that HTI waived the issue of whether Roytek should be reinstated and receive back pay, since it did not raise such issues before LIRC.[5]

## II

¶ 10. We now consider whether Roytek was an individual with a disability under the WFEA. The issue of whether Roytek was disabled under the WFEA presents a question of law. *La Crosse Police Comm'n v.*

---

[4] Unless otherwise indicated, all references to Wisconsin Statutes are to the 2001–02 edition. Wisconsin Stat. § 111.32(8) states, in relevant part, as follows:

"Individual with a disability" means an individual who:

(a) Has a physical or mental impairment which makes achievement unusually difficult or limits the capacity to work;

(b) Has a record of such an impairment; or

(c) Is perceived as having such an impairment.

[5] We agree with the court of appeals that HTI waived the issue of whether Roytek should be reinstated and receive backpay through the date of reinstatement since it failed to raise the issue in its brief before LIRC. Thus, we decline to further address this issue.

*LIRC,* 139 Wis. 2d 740, 755, 407 N.W.2d 510 (1987).[6] We must decide whether there was a rational basis for LIRC's conclusion that Roytek was an individual with a disability.[7] *Id.* at 756.

¶ 11. HTI contends that Roytek is not an individual with a disability under Wis. Stat. § 111.32(8). HTI asserts that Roytek's condition does not make achievement unusually difficult, as set forth in § 111.32(8). HTI claims that achievement is unusually difficult when there is "a substantial limitation on life's normal functions or substantial limitation on a major life activity." *Id.* at 761. HTI maintains that an employee must be restricted from a vast array of jobs in order to be deemed substantially limited in the major life activity of working. Simply because Roytek is limited in the number of hours she may work, HTI contends, does not mean that she has a disability under

---

[6] Wisconsin Stat. § 227.57(5) provides, in relevant part, as follows:

> The court shall set aside or modify the agency action if it finds that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action, or it shall remand the case to the agency for further action under a correct interpretation of the provision of law.

*See also School Dist. of Drummond v. WERC,* 121 Wis. 2d 126, 132–33, 358 N.W.2d 285 (1984), which held that "[w]hen the legislature charges an administrative agency to apply and enforce a particular statute as it has with the commission and ch. 111, Stats., the agency's construction and interpretation of the statute are entitled to great weight and any rational basis will sustain its practical interpretations." (Citations omitted).

[7] We note that the phrase "individual with a disability," as set forth in Wis. Stat. § 111.32(8), has been substituted for "handicapped individual," which was the phrase at issue in *La Crosse Police Comm'n v. LIRC,* 139 Wis. 2d 740, 752, 407 N.W.2d 510 (1987).

the WFEA. HTI asserts that *La Crosse* interpreted the "limits the capacity to work" language of § 111.32(8) too broadly, when it concluded that the language should be interpreted in light of a person's ability to perform the specific job in question. Instead, HTI maintains, this language should be interpreted so as to lead to the determination of whether an individual is limited in potential to work any job.

¶ 12. Roytek contends that she has demonstrated that she has a disability under Wis. Stat. § 111.32(8), because a back condition may be considered an actual or perceived handicap under the WFEA. Roytek also claims that she has proven that her disability limits her ability to perform her photoetch position. Based on the *La Crosse* decision, Roytek contends that she need only demonstrate her inability to perform the specific job in question. Roytek asserts that she also has demonstrated that her disability has interfered with major life activities, such as performing manual tasks, walking, and sitting. Roytek argues that she is further protected under § 111.32(8) because HTI perceived her back condition as a disability.

¶ 13. LIRC contends that this court should not give in to HTI's urgings to revisit and revise our *La Crosse* decision. LIRC asserts that the language "limits the capacity to work" should not be interpreted as referring to one's ability to work, in general. Instead, LIRC maintains that *La Crosse*'s interpretation as referring to one's ability to work a particular job is correct.

¶ 14. The Wisconsin legislature defined "an individual with a disability" in Wis. Stat. § 111.32(8)(a). As noted previously, § 111.32(8)(a) states, in relevant part, that an individual has a disability when a physical or

mental impairment "makes achievement unusually difficult or limits the capacity to work . . . ."

¶ 15. This court further explained this phrase in our *La Crosse* decision. In *La Crosse,* we concluded that a person claiming to be an individual with a disability under the WFEA must establish two things. First, the person must demonstrate that he or she has an actual or perceived impairment. *Id.* at 762. Second, the person must demonstrate that this impairment either makes, or is perceived as making, achievement unusually difficult or limits one's capacity to work. *Id.*

¶ 16. With respect to the first step, we defined an impairment as "a real or perceived lessening or deterioration or damage to a normal bodily function or bodily condition, or the absence of such bodily function or such bodily condition." *Id.* at 761. Roytek has established that she has damage to her normal bodily condition, as both Ippel and Zondag concluded that she had back pain related to disc problems, and that such problems restricted her ability to work a 12–hour shift, and engage in prolonged static standing or sitting.

¶ 17. Since we conclude that the first step is satisfied, we proceed to consider whether the impairment makes " 'achievement unusually difficult *or* limits the capacity to work.' " *Id.* (quoting Wis. Stat. § 111.32(8)(a) (emphasis added)). Either condition may be satisfied in order to establish that a person has a disability. With respect to the "achievement" criterion, we have concluded that "(t)he determination rests not with respect to a particular job, but rather to a substantial limitation on life's normal functions or a substantial limitation on a major life activity." *Id.* With respect to the "limits the capacity to work" phrase, we have concluded that it refers to the specific job at issue. *Id.*

¶ 18. We conclude that Roytek is limited in her capacity to work in her job. As discussed above, both Ippel and Zondag concluded that Roytek is limited in the amount of static standing and sitting she can endure before experiencing pain. Moreover, HTI claimed that there are certain positions in the photo-etch department that Roytek may no longer be able to perform, such as the shearing and bay positions.

¶ 19. Because Roytek has satisfied the criteria under Wis. Stat. § 111.32(8)(a), we conclude that Roytek is an individual with a disability. We are satisfied that there was a rational basis for LIRC's determination. We reject HTI's contention that *La Crosse*'s interpretation of "limits the capacity to work" is too broad. We noted in *Crystal Lake* that "[t]he WFEA is a 'remedial statute . . . [and] should be broadly interpreted to resolve the problem it was designed to address.' " *Crystal Lake Cheese Factory v. LIRC*, 2003 WI 106, ¶ 46, 264 Wis. 2d 200, 664 N.W.2d 651 (quoting *McMullen v. LIRC*, 148 Wis. 2d 270, 275, 434 N.W.2d 830 (Ct. App. 1988)).

### III

¶ 20. We next consider whether LIRC's conclusion that HTI refused to reasonably accommodate Roytek's disability, and that HTI failed to demonstrate that making such accommodation would impose a hardship upon its business, can be upheld.

¶ 21. We will set aside a decision by LIRC only when " 'the agency's action depends on any finding of fact that is not supported by substantial evidence in the record.' " *Crystal Lake*, 264 Wis. 2d 200, ¶ 27 (quoting

Wis. Stat. § 227.57(6)).[8] The test for substantial evidence is whether reasonable minds could reach the same conclusion as the agency, given the evidence in the record. *Id.*

¶ 22. In this case, we give LIRC's decisions concerning reasonable accommodation great weight deference. Great weight deference is afforded to an agency's decision under the following circumstances:

> "(1) the agency was charged by the legislature with the duty of administering the statute; (2) that the interpretation of the agency is one of long-standing; (3) that the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) that the agency's interpretation will provide uniformity and consistency in the application of the statute."

*Brauneis v. State,* 2000 WI 69, ¶ 16, 236 Wis. 2d 27, 612 N.W.2d 635 (citing *Harnischfeger Corp. v. LIRC,* 196 Wis. 2d 650, 660, 539 N.W.2d 98 (1995)).

¶ 23. In *Crystal Lake,* we cited with approval the court of appeals' conclusion in *Target Stores v. LIRC,* 217 Wis. 2d 1, 576 N.W.2d 545 (Ct. App. 1998), that LIRC's interpretation of "reasonable accommodation" should be afforded great weight deference. *Crystal Lake,* 264 Wis. 2d 200, ¶ 29 (citations omitted)(citing *Target,* 217 Wis. 2d at 13). In *Crystal Lake,* we con-

---

[8] Wisconsin Stat. § 227.57(6) states, in relevant part, the following:

> If the agency's action depends on any fact found by the agency in a contested case proceeding, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record.

cluded that LIRC's interpretation of reasonable accommodation should be accorded great weight deference for the following reasons:

> "First, LIRC is charged with adjudicating appeals from the hearing examiner's decision on complaints under the WFEA, § 111.39(5), Stats., which includes complaints under § 111.322, Stats., for handicap discrimination. Second, § 111.34(1), Stats., was enacted in 1981 and LIRC has developed experience and expertise in interpreting this section. . . . Third, by according great deference to these determinations, we will promote greater uniformity and consistency than if we did not do so. Fourth, this determination is intertwined with factual determinations. Fifth, this determination involves value and policy judgments about the obligations of employers and employees when an employee, or prospective employee, has a handicap.

*Id.* (Citations omitted).

¶ 24. Here, we reaffirm our conclusion in *Crystal Lake* that LIRC's determination regarding reasonable accommodation should be given great weight deference.[9] We further conclude that LIRC's interpretation

---

[9] We strongly disagree with the dissent's statement that the appropriate standard of review is de novo. *See* dissent, ¶¶ 50–51. Our decision in *Crystal Lake* makes it clear that great weight deference is the appropriate standard of review for LIRC decisions regarding reasonable accommodation and hardship under the WFEA. *Crystal Lake Cheese Factory v. LIRC,* 2003 WI 106, ¶¶ 29, 53, 79, 264 Wis. 2d 200, 664 N.W.2d 651. Moreover, while the specific facts in this case may differ from the facts of previous cases of reasonable accommodation and hardship dealt with by LIRC, it does not follow that the issues of reasonable accommodation and hardship are one of first impression. If this were true, all decisions by LIRC would involve issues of first impression, because no two sets of facts are likely to be the same.

of hardship deserves great weight deference as well. In *Crystal Lake,* we stated that "[h]ere, any decision made by LIRC will be given great weight due to the agency's knowledge and experience in application of Wis. Stat. § 111.34," *Id., ¶* 28 (citing *Target,* 217 Wis. 2d at 13), and specifically concluded that LIRC's findings regarding hardship are entitled to great weight deference. *Id., ¶¶* 53, 79. We will uphold LIRC's interpretation of a statute, if it is reasonable and compatible with the plain meaning of the statute even if another interpretation may be more reasonable. *Id., ¶* 30.

¶ 25. HTI contends that Roytek must prove whether an accommodation is reasonable or unreasonable under Wis. Stat. § 111.34(1).[10] If the employee can prove that a reasonable accommodation exists, HTI asserts that the burden then shifts to the employer to demonstrate that such accommodation would impose a hardship on the employer.[11] HTI claims that the accommodations proposed here would not help Roytek per-

---

[10] Wisconsin Stat. § 111.34(1) states, in relevant part, as follows:

> Employment discrimination because of disability includes, but is not limited to:

> (a) Contributing a lesser amount to the fringe benefits, including life or disability insurance coverage, of any employee because of the employee's disability; or

> (b) Refusing to reasonably accommodate an employee's or prospective employee's disability unless the employer can demonstrate that the accommodation would pose a hardship on the employer's program, enterprise or business.

[11] Wisconsin Manufacturers & Commerce, Inc. (WMC) filed an amicus brief in this case and also participated in oral arguments. WMC contends that LIRC erred in placing the burden on HTI to demonstrate that the accommodation was reasonable. Instead, WMC claims, Roytek should have had to

form her job but would, in fact, excuse her from performing it. HTI maintains that it is not required to shorten its shift length to accommodate Roytek and that it would suffer hardship if it was forced to do so. HTI contends that it did not offer statistical data regarding lost profits, production losses, and morale problems because the eight-hour shift was intended to be a temporary accommodation only. HTI asserts that forcing it to create an eight-hour shift for Roytek strips it of its management prerogative of setting its own policy with respect to shift schedules. Moreover, HTI contends that it may be forced to implement a part-time or job-share program, Roytek will have to work on two crews under two different supervisors, an additional person may need to be hired to deal with scheduling, and there will be uncertainty as to the shortest shift it will be required to accommodate.

¶ 26. HTI contends that simply because it could accommodate Roytek's condition for a short time, does not mean that it could do so permanently. Aside from Roytek's hours restrictions, HTI claims that it would experience hardship if it were to accommodate all of Roytek's other physical issues, such as her inability to static stand or sit for a long period of time. Under her restrictions, HTI asserts that Roytek can fill only one of the four positions completely in the photoetch department and, regardless of the accommodation made, she will continue to experience pain on the job.[12] HTI

---

prove that an accommodation was reasonable. In addition, WMC asserts that Roytek was required to prove that the accommodation was effective and that its burden was proportional to its benefits. WMC contends that Roytek failed to meet any of these burdens.

[12] In *Crystal Lake*, 264 Wis. 2d 200, ¶ 52, n.19, we stated that the emphasis should be on the employee's ability to

maintains that courts should not second-guess the policy judgments of a business when the structure of a position serves a legitimate business purpose. HTI contends that requiring it, in effect, to create a new job to accommodate Roytek would result in hardship.

¶ 27. Roytek contends that, since she established that she had a disability under the WFEA, the burden then shifted to HTI to prove that the requested accommodation was unreasonable or would impose a hardship upon it. Roytek claims that she worked eight-hour shifts for eight months and never received complaints about her work. Moreover, Roytek maintains that no employees complained to management that they were overburdened due to Roytek's schedule, and no temporary workers were hired to compensate for the hours Roytek did not work. Roytek asserts that HTI has produced no credible evidence that it experienced hardship by accommodating her. Roytek contends that speculation as to problems that may arise in the future is not enough to establish hardship.

¶ 28. LIRC asserts that the employer has the burden of proving that a proposed accommodation is unreasonable. LIRC contends that the initial burden of proof as to the reasonableness of an accommodation should fall on the employee. Once the employee has met this initial burden of proof, LIRC maintains that the employer must show that the accommodation is unreasonable or that it would impose a hardship on the employer. LIRC contends that this court should not conclude that, as a matter of law, an employer can never be required to modify an employee's work schedule. LIRC concludes that it could reasonably find that HTI

---

perform her job responsibilities adequately, not on terms that attempt to quantify the number of job responsibilities the employee can perform.

could accommodate Roytek without experiencing hardship. LIRC claims that the WFEA may require an employer to create modified work schedules as part of a reasonable accommodation, if the employer would not experience hardship. Moreover, LIRC maintains that HTI has failed to produce any evidence that its production has suffered due to Roytek's modified schedule.

¶ 29. We begin by recognizing the important role that management prerogatives play in the success of a business. This court has stated that "it is necessary to preserve the freedom of private enterprise to manage its business as it sees fit." *Libby, McNeill & Libby v. WERC,* 48 Wis. 2d 272, 280, 179 N.W.2d 805 (1970). *See also Kelley Co. v. Marquardt,* 172 Wis. 2d 234, 251, 493 N.W.2d 68 (1992).[13] We are mindful that a business must have the right to set its own employment rules to encourage maximum productivity. We caution, however, that such rules do not exist in a vacuum, but must bend to the requirements of the WFEA.

¶ 30. Because our recent decision in *Crystal Lake* has direct bearing in this case, it is necessary to discuss it in some detail. In *Crystal Lake,* an employee of Crystal Lake Cheese Factory was injured in a non-work related automobile accident and became a quadriplegic. *Crystal Lake,* 264 Wis. 2d 200, ¶ 9. Before her accident,

---

[13] In *Kelley Co. v. Marquardt,* 172 Wis. 2d 234, 493 N.W.2d 68 (1992), which involved a different issue under the Family Medical Leave Act, we discussed the necessary balancing that must occur between management prerogatives and statutory rights of employees. We stated: "On one hand, businesses are not curtailed from making legitimate business decisions and changes, and on the other hand, an employee may take family or medical leave without the fear of losing his or her position in the work place which includes status, authority, and responsibility." *Id.* at 251.

the employee was head of a four-person department that consisted of the following positions: department head, cheese cutter, cryovacer, and labeler. *Id.*, ¶ 6. After her accident, the employee contacted Crystal Lake to state that she was ready to return to work. *Id.*, ¶ 10. Crystal Lake hired a consulting firm to determine what accommodations would need to be made that would enable the employee to do her job. *Id.* The firm ultimately concluded that no reasonable accommodations could be made to enable the employee to do her job. *Id.* The employee hired her own assessor who concluded that she could be reasonably accommodated. *Id.*, ¶ 11. At the time of this assessment, the employee's department had been eliminated, and her former job no longer existed. *Id.* The employee filed suit against Crystal Lake.

¶ 31. The administrative law judge concluded that Crystal Lake did not discriminate against the employee because there were no reasonable accommodations that could be made. *Id.*, ¶ 14. The employee appealed to LIRC. LIRC concluded that reasonable accommodations could have been made, such as modifying her job duties to excuse her from doing more taxing physical tasks, without hardship befalling Crystal Lake. *Id.*, ¶ 15. Both the circuit court and the court of appeals affirmed LIRC's decision. *Id.*, ¶¶ 17–20.

¶ 32. We stated that, as an initial matter, a plaintiff must show that he or she is an "individual with a disability" under Wis. Stat. § 111.32(8) and that his or her employer took one of the several actions listed in Wis. Stat. § 111.322. *Id.*, ¶ 42. Once the employee meets the initial burden of proving that he or she has a disability, we stated that the employer then has the burden of proving a defense under Wis. Stat. § 111.34. *Id.* We stated that "§ 111.34(1)(b) and (2)(a) require an

413

employer to prove that even with reasonable accommodations, the employee would not be able to perform his or her job responsibilities adequately or that, where reasonable accommodations would enable the employee to do the job, hardship would be placed on the employer." *Id.,* ¶ 32 (citation omitted). Since there was no dispute that the employee had a disability in *Crystal Lake,* we focused our analysis on whether reasonable accommodations could have been made for the employee without creating hardship for Crystal Lake. *Id.,* ¶ 44.

¶ 33. We rejected Crystal Lake's contention that a reasonable accommodation need only be made if it enables the employee to perform all of his or her job functions.[14] *Id.,* ¶ 47. After discussing cases such as *Target, McMullen,* and *Frito Lay, Inc. v. LIRC,* 95 Wis.

---

[14] The dissent contends that we fail to recognize the relationship between Wis. Stat. § 111.34(1)(b) and (2)(a). Dissent, ¶ 61. To the contrary, we recognized the connection between those provisions in *Crystal Lake* and reiterate our discussion of the connection here. The dissent incorrectly concludes that the accommodation was unreasonable "because it did not permit the employer to have the job-related responsibilities of Roytek's employment met, i.e., working for 12–hour shifts." *Id.,* ¶ 62. It is important to note that HTI never demonstrated that Roytek's shift change adversely affected its production schedule or its employee morale. Moreover, we again emphasize our conclusion in *Crystal Lake* that: "A reasonable accommodation is not limited to that which would allow the employee to perform adequately all of his or her job duties. A change in job duties may be a reasonable accommodation in a given circumstance." *Crystal Lake,* 264 Wis. 2d 200, ¶ 52. The decisions in *Target Stores v. LIRC,* 217 Wis. 2d 1, 576 N.W.2d 545 (Ct. App. 1998) and *McMullen v. LIRC,* 148 Wis. 2d 270, 275, 434 N.W.2d 830 (Ct. App. 1988) were correctly cited by us as supporting that conclusion.

2d 395, 290 N.W.2d 551 (Ct. App. 1980), we ultimately concluded that "[a] change in job duties may be a reasonable accommodation in a given circumstance." *Crystal Lake,* 264 Wis. 2d 200, ¶ 52. We noted that the fact that two of the three other employees in the employee's department were willing to accommodate her change in job duties supported the argument that such accommodation would be a reasonable one. *Id.,* ¶ 51.

¶ 34. With respect to our analysis of hardship in *Crystal Lake,* we noted that while there is some overlap, hardship and reasonable accommodation are " 'separate and distinct considerations that are to be addressed independently.' " *Id.,* ¶ 75 (quoting *McMullen,* 148 Wis. 2d at 277). We concluded that Crystal Lake could have modified the employee's job site, as well as her job duties, without experiencing hardship.[15] *Id.,* ¶¶ 76–77.

■

¶ 35. Applying our decision in *Crystal Lake,* and the cases we relied on for that decision, and according great weight deference to the LIRC decision, we conclude that HTI did not meet its burden in rebutting the initial burden satisfied by Roytek. HTI failed to estab-

---

[15] The dissent incorrectly concludes that our holding in this case "goes far beyond our conclusions in *Crystal Lake. . . .*" Dissent, ¶ 64. Rather, our decision in this case is absolutely consistent with our holding in *Crystal Lake.* As explained above, we concluded that the employer in *Crystal Lake* did not demonstrate that it would experience hardship in providing a reasonable accommodation to its disabled employee. *Crystal Lake,* 264 Wis. 2d 200, ¶¶ 76–77. Similarly, HTI has failed to produce any evidence, beyond mere speculation, that it would experience hardship if it accommodated Roytek. Both cases boil down to the failure by each of these employers, HTI and Crystal Lake, to satisfy the requisite burden of proof.

lish that no reasonable accommodations could be made to enable Roytek to perform her job, or that it would experience hardship in making such accommodations. We further conclude that we see no substantial difference in the positions of LIRC and HTI regarding which party has the burden of proof with respect to reasonable accommodation. We conclude that the initial burden is on the employee to prove that a reasonable accommodation is available, and, in this case, Roytek has satisfied that burden.[16] Substantial and credible evidence is present in the record from which LIRC could hold as it did that HTI failed to reasonably accommodate Roytek. Clearly, a reasonable accommodation was available, since HTI accommodated Roytek's eight-hour shifts for eight months without any problems.

¶ 36. Moreover, HTI's assertions that any prolonged continuation of this schedule would create a hardship are unpersuasive.[17] Over a two-week period, Roytek had the potential to work only four hours fewer

---

[16] Inexplicably, the dissent claims that we ignore a claimant's initial burden to demonstrate that a reasonable accommodation is available. *See* dissent, ¶ 62. We have plainly stated that Roytek has the initial burden of establishing that a reasonable accommodation exists, and has met that burden.

[17] While Wis. Stat. § 111.34(1)(b) states that a business must demonstrate "hardship," the Americans with Disability Act (ADA) refers to "undue hardship." The provision, 42 U.S.C. § 12112(b)(5)(A) states, in relevant part, as follows:

> As used in subsection (a) of this section, the term "discriminate" includes— ... not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship in the operation of the business of such covered entity. ...

416

than her fellow employees due to a possible schedule of five eight-hour days weekly.[18] Although HTI hypothesized that certain problems could arise in the future, it presented no evidence that any ever did. For example,

Based on our decision in *Crystal Lake,* 264 Wis. 2d 200, ¶ 46, it appears quite clear that there is no real difference in the terms "hardship" and "undue hardship," since the "hardship" referred to in Wis. Stat. § 111.34(1)(b) must be substantial in nature, and definitely something more than mere speculation. The dissent is absolutely wrong when it states that we "import" the undue hardship test from the ADA into the standard set forth in § 111.34(1)(b). *See* dissent, ¶ 59, n.6. We merely point out the differences in the language and indicate that there is no substantial difference between the two terms, since "hardship" under § 111.34(1)(b) certainly must be something more than a slight inconvenience. In *Crystal Lake,* we concluded that the employer failed to prove that it would experience hardship if it were required to modify its employee's jobsite and responsibilities, since it performed a generic evaluation of what limitations a wheelchair-bound person would experience while performing the job, and avoided talking with the employee to find out what her actual limitations were. *Crystal Lake,* 264 Wis. 2d 200, ¶¶ 76–80.

[18] In the ALJ's memorandum, he stated that HTI refused to put Roytek on a five-day per week schedule because they claimed that it would be problematic if she worked on two different crews and for two different supervisors. Although HTI stated that problems would arise if Roytek worked on two different crews and for two different supervisors, it never explained in detail the difficulties it claimed this would impose. While Roytek never worked a five-day per week schedule, it is certainly not the case that she offered "to continue working only two-thirds of her shift. . . ." Dissent, ¶ 45. In fact, she "offered" to work 40–hour weeks, but HTI declined such arrangement without offering any evidence of the difficulties that this modified schedule would impose upon it. Rather, it offered nothing but speculation in support of its position.

HTI did not submit any evidence that other employees sought to work reduced shifts, that morale problems had arisen among its other employees, or that production had decreased as a result of Roytek's arrangement. We agree with LIRC's conclusion that "[t]he hypothetical difficulties associated with permanent part-time status for the complainant are simply too speculative to meet the respondent's burden of proof in the matter. The respondent had ten months[19] to determine that the complainant's shorter work shift caused production or profit losses, but failed to do so." We further agree with the court of appeals' conclusion that HTI was "unable to point to significant evidence in the record that demonstrates hardship in this particular situation, rather than speculation or theoretical complaints." *Hutchinson,* No. 02–3328, unpublished slip op., ¶ 5. We agree with these statements by LIRC and the court of appeals which concluded that HTI failed to meet its burden of proof on hardship and has failed to rebut Roytek's argument that a reasonable accommodation could have been made.[20] We reiterate our conclusion in *Crystal*

---

[19] The ten months refers to the two months Roytek worked six-hour shifts, from November 1998 to January 1999, and the eight months that she worked eight-hour shifts, from January 1999 to August 1999.

[20] While the dissent lists a parade of horribles that may occur as a result of this decision, such an alarmist approach is without merit. *See* dissent, ¶¶ 65, 68, 70–71. Our decision in this case hinges on the fact that HTI was unable to provide any proof that providing a reasonable accommodation to Roytek would work hardship upon its business. Had HTI provided anything beyond mere speculation as to the problems that *might* arise if it were forced to accommodate Roytek, the evidence could then have been evaluated to determine if such accommodation would have, indeed, imposed hardship. Nevertheless, the dissent fails to acknowledge that HTI has not

*Lake* that reasonable accommodation and hardship are two distinct concepts that involve separate inquiries, since an accommodation may be reasonable, but nevertheless work a hardship upon a specific employer.[21] *Crystal Lake,* 264 Wis. 2d 200, ¶ 75. *See also McMullen,* 148 Wis. 2d at 277. As the abovementioned analysis indicates, HTI failed both tests. HTI did not introduce any evidence, beyond mere conjecture, that accommodating Roytek would impose a hardship upon its business.

## IV

¶ 37. We conclude that Roytek is a person with a disability under the WFEA, and that Roytek met her initial burden of establishing the reasonableness of her proposed accommodations. HTI did not establish that it could not reasonably accommodate Roytek's disability, since it accommodated her disability for eight months without any significant difficulties. Moreover, HTI did not introduce any evidence that allowing Roytek to continue to work eight-hour shifts at HTI would cause hardship to its business. We are mindful that a business must have the right to set its own employment rules to encourage maximum productivity. We caution, however, that such rules do not exist in a vacuum, but must bend

---

proved that it would experience hardship and, instead, resorts to hyperbole to reach its conclusion.

[21] Contrary to the dissent's contention, we do not conflate the applicable statutory provisions in this case. *See* dissent, ¶ 54. We have analyzed, in detail, whether Roytek met her initial burden of demonstrating that a reasonable accommodation exists and whether HTI rebutted that showing and met its burden of demonstrating hardship, if it were forced to accommodate Roytek.

to the requirements of the WFEA. We, therefore, affirm the court of appeals' decision.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 38. DIANE S. SYKES, J. (*concurring*). This case is controlled by this court's interpretation in *Crystal Lake Cheese Factory v. LIRC,* 2003 WI 106, 264 Wis. 2d 200, 664 N.W.2d 651, of the "reasonable accommodation" requirement of the disability discrimination provisions in the Wisconsin Fair Employment Act (WFEA), Wis. Stat. § 111.34. In *Crystal Lake,* this court concluded that compliance with the "reasonable accommodation" requirement of the WFEA as it pertains to disability discrimination may require an employer to alter the job responsibilities associated with the employee's or prospective employee's job. *Crystal Lake,* 264 Wis. 2d 200, ¶ 52. The court held that "[a] change in job duties may be a reasonable accommodation in a given circumstance." *Id.*

¶ 39. In reaching this conclusion in *Crystal Lake,* this court addressed and specifically rejected an interpretation of Wis. Stat. § 111.34 that would have reconciled the language of subsection (1)(b) of the statute with subsection (2)(a) of the statute, as argued by Justice Roggensack in dissent here. *Crystal Lake,* 264 Wis. 2d 200, ¶¶ 34–52. Subsection (1)(b) of Wis. Stat. § 111.34 defines disability discrimination as including "[r]efusing to reasonably accommodate an employee's or prospective employee's disability." However, subsection (2)(a) of the statute provides that "it is not employment discrimination . . . to refuse to hire, employ, . . . or terminate . . . any individual . . . [on account of disability] if the disability is reasonably related to the individual's

ability to adequately undertake the job-related responsibilities of that individual's employment."

¶ 40. The employer in *Crystal Lake* argued that these two sections of the WFEA, read together, meant that the "reasonable accommodation" requirement of the statute was confined to accommodations that would permit the disabled employee to perform the existing responsibilities of employment as determined by the employer. *Crystal Lake,* 264 Wis. 2d 200, ¶¶ 33–35. The court rejected this interpretation, instead holding that "a reasonable accommodation is not limited to that which would allow the employee to perform adequately all of his or her job duties." *Id.,* ¶ 52. That is, the court held that the "reasonable accommodation" requirement may compel an employer to alter the responsibilities of employment—that is, to redefine the job, or create a new job—in order to avoid committing disability discrimination under the WFEA. The statute allows an employer to defend against a disability discrimination claim by showing that the "accommodation would pose a hardship on the employer's program, enterprise or business," *see* Wis. Stat. § 111.34(1)(b); the court in *Crystal Lake* affirmed LIRC's conclusion that the employer had not carried its burden of demonstrating hardship. *Crystal Lake,* 264 Wis. 2d 200, ¶¶ 79–80.

¶ 41. Also important to the outcome here, the court in *Crystal Lake* held that LIRC's determinations of "reasonable accommodation" and "hardship" for purposes of Wis. Stat. § 111.34 were entitled to great weight deference on judicial review. *Crystal Lake,* 264 Wis. 2d 200, ¶¶ 28–30.

¶ 42. I disagreed with the court's resolution of these issues in *Crystal Lake,* agreeing instead with the analysis in Justice Prosser's dissent. *Id.,* ¶¶ 84–136 (Prosser, J., dissenting). Here, Justice Roggensack has

identified some of the flaws and consequences of an interpretation of the WFEA that fails to reconcile the language of Wis. Stat. § 111.34(1)(b) and (2)(a). These arguments, however, were made by the employer in *Crystal Lake* and discussed at length in Justice Prosser's dissent, which I joined.

¶ 43. *Crystal Lake* is applicable and binding precedent, and I cannot distinguish its interpretation of the WFEA's reasonable accommodation requirement as Justice Roggensack has done here. *Crystal Lake* did not define "reasonable accommodation" as an accommodation that would permit the employer to have the job-related responsibilities of the individual's employment met or permit an employer to implement a valid management decision. Dissent, ¶¶ 1, 10, 13, 18–22. To the contrary, *Crystal Lake* broadly held that an employer may indeed be required to alter an employee's job responsibilities in order to comply with the WFEA, and that LIRC's determinations of "reasonable accommodation" in this regard are entitled to great weight deference. As such, although I disagreed with *Crystal Lake,* I am bound by it, and join the court's application of it in this case. Any remedy will have to come from the legislature.

¶ 44. I am authorized to state that Justice JON P. WILCOX joins this concurrence.

¶ 45. PATIENCE D. ROGGENSACK, J. (*dissenting*). The majority opinion concludes that because Hutchinson Technology, Inc. (HTI) refused to permit the claimant, Susan Roytek, to work 56 hours every two weeks, rather than the 84 hours every two weeks that she was hired to work, it has unreasonably failed to accommodate her disability; and therefore, HTI has discriminated against her in violation of the Wisconsin

Fair Employment Act (WFEA). However, I conclude no WFEA violation occurred because Roytek's offer to continue working only two-thirds of her shift is insufficient to be an "accommodation," as that term is used in Wis. Stat. § 111.34(1)(b) (2001-02).[1] Additionally, Roytek's offer results in negating § 111.34(2)(a), which provides that it is not discrimination to refuse to employ an individual when the job-related responsibilities of that individual's employment are not met. Accordingly, I respectfully dissent.

## I. BACKGROUND

¶ 46. Roytek was hired by HTI in June of 1998 in the photoetch department as a photoetch operator. When she was hired, she was told that HTI operated 24 hours per day, seven days a week. HTI explained that it had determined that operating in 12–hour shifts, four shifts one week and three shifts on the next, met the needs of HTI to increase production by fully utilizing its equipment and it also met the preference of HTI's employees who were asked whether they preferred to work eight-hour shifts five days each week or 12–hour shifts, three or four days per week. She accepted the position, which involved rotating through four types of work throughout each shift: inspection, shearing, bookwork and work in the bay.[2] Prior to being hired by

---

[1] All further references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] The record reflects that during the hours she works, Roytek is not able to perform all of the tasks due to her inability to stand or sit for the length of time required. However, this aspect of Roytek's inability to perform her job has not been addressed by the majority opinion, although it was briefed by

HTI, Roytek had suffered from low back pain. She stated that she has had problems with her back since March of 1990 or 1991.

¶ 47. Roytek worked the 12–hour shifts for approximately three months, until mid-September of 1998, when she took a medical leave of absence, not returning until November of that year. When she returned, she had a note from her treating physician stating that she could work only six-hour shifts so at that time, she worked 42 hours every two weeks. In January of 1999, her treating physician increased her work time to an eight-hour shift and then she worked no more than 56 hours every two weeks.[3] Full-time employees in the photoetch department worked 84 hours every two weeks. HTI employs no part-time employees. However, HTI permitted Roytek to continue her employment with the expectation that she would resume the required 12–hour shifts, when her back condition improved.

¶ 48. In the early summer of 1999, one of the physicians who had examined Roytek gave his professional opinion that she could work no more than eight hours per shift on a permanent basis. When HTI learned that Roytek would never be able to work full-time, it terminated her.

---

HTI. Because it is not necessary to my analysis of Roytek's claim, I do not discuss it further.

[3] The majority opinion implies that Roytek worked eight-hour shifts, five days per week. Majority op., ¶ 36. However, the record, which contains Roytek's time-sheets, shows she never worked more than eight-hour shifts three days one week and four days the next. There were many two-week periods where she did not even work those hours. Accordingly, although she was hired as a full-time employee, she never returned to full-time work.

¶ 49. Roytek sued HTI, claiming the back condition that caused her to be unable to work the full shift for which she had been hired was a disability within the meaning of WFEA, and that HTI violated WFEA when it terminated her based on the effects of that disability. LIRC agreed with her contention, concluding that because HTI had accommodated her 56-hour per two weeks work schedule in the past, HTI should be required to continue that schedule on a permanent basis, thereby leaving HTI's equipment unused for 28 hours every two weeks, or 728 hours per year.[4] HTI appealed and the circuit court affirmed, as did the court of appeals. We accepted review, and are now presented with the question of whether an employer, who makes a business decision to utilize its facilities 24-hours per day, will be permitted to do so when confronted with employees and prospective employees who provide medical statements that they cannot work the full shift necessary to accomplish that valid management decision.

## II. DISCUSSION

A. Standard of Review

¶ 50. Questions of statutory interpretation and application, which when decided by an administrative agency, such as LIRC, may be given deference at one of three levels: great weight deference, due weight deference, or no deference in a de novo review. *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996). As will be explained below, LIRC did not interpret the dispositive Wis. Stat. § 111.34 issue, *i.e.*, whether work-

---

[4] If Roytek were to work eight-hour shifts five days per week, HTI's equipment would be unused 40 hours every two weeks or 1,040 hours per year.

ing eight-hour shifts on a permanent basis was an "accommodation," as that term is used in § 111.34(1)(b). LIRC went directly to assessing whether HTI had shown a hardship under subsection (1)(b). Accordingly, there is nothing to which to defer. Additionally, the definition of "accommodation" and its effect on the legal sufficiency of a WFEA claim is one of first impression for LIRC that we would review de novo. *See Keup v. DHFS*, 2004 WI 16, ¶ 16, 269 Wis. 2d 59, 675 N.W.2d 755; *see also Bunker v. LIRC*, 2002 WI App 216, ¶ 16, 257 Wis. 2d 255, 650 N.W.2d 864 (taking up and deciding a legal issue that LIRC did not address).

¶ 51. In order to state a claim for a WFEA violation based on a disability, Roytek must state an accommodation that satisfies Wis. Stat. § 111.34(1)(b) and (2)(a). We do not determine whether an accommodation is reasonable or whether it causes a hardship until we assess whether the employee or prospective employee's suggestion permits the job-related responsibilities of that individual's employment to be met. This is so because it is only then that a statutorily sufficient accommodation has been stated.

¶ 52. Whether an employee has stated an accommodation presents a question of law on which courts have extensive experience; therefore, we owe no deference to LIRC. *See Anderson v. LIRC*, 111 Wis. 2d 245, 253, 330 N.W.2d 594 (1983) (applying a de novo standard of review to LIRC's decision interpreting a WFEA provision); *Harrison v. LIRC*, 211 Wis. 2d 681, 685, 565 N.W.2d 572 (Ct. App. 1997) (applying a de novo standard of review to the question of whether Harrison's complaint stated a claim under WFEA).

## B. Roytek's WFEA Discrimination Claim

### 1. Introduction

¶ 53. Roytek must establish that she has a disability and that a reasonable accommodation for that disability is available. Majority op., ¶ 35. I agree that in Wisconsin, Roytek has a disability under long-established case law. *City of La Crosse Police & Fire Comm'n v. LIRC,* 139 Wis. 2d 740, 752, 407 N.W.2d 510 (1987). However, where I part company with the majority is in its implicit conclusion[5] that Roytek has shown an accommodation by working eight hours per day, three days one week and four days the next, because her suggestion is not an accommodation, under Wis. Stat. § 111.34(1)(b). Therefore, her termination is not a violation of WFEA according to § 111.34(2)(a).

¶ 54. In my view, the majority opinion misinterprets the statute in two fundamental ways. First, it does not recognize the connection between Wis. Stat. § 111.34(1)(b) and (2)(a), both of which bear on the meaning of accommodation in subsection (1)(b). The first clause of subsection (1)(b) focuses on the claimant's obligation to show an "accommodation." Subsection (2)(a) requires that the plan selected permits the employer to have the job-related responsibilities of that individual's employment met. The majority opinion, however, implicitly assumes by its statement, "HTI failed to provide a reasonable accommodation that would have allowed [Roytek] to continue her employment," that Roytek provided a statutorily sufficient

---

[5] The majority opinion does not recognize the issue upon which I conclude this case turns, whether permitting Roytek to permanently work two-thirds of the shifts she was hired to fill is an accommodation within the meaning of Wis. Stat. § 111.34(1)(b) and (2)(a).

accommodation in the first instance. Majority op., ¶ 1. The majority opinion then concludes that HTI violated WFEA because it did not show hardship under § 111.34(1)(b). Majority op., ¶ 36. In so doing, it conflates three distinct statutory provisions: (1) whether the claimant has stated an accommodation; (2) if so, whether the accommodation is reasonable; and (3) if so, whether the employer has shown that the reasonable accommodation would pose a hardship to its business operation.

¶ 55. Second, the majority opinion ignores the valid business decision of HTI to increase production by using its equipment 24 hours per day, and in so doing, it negates the protections afforded an employer to make such a decision under Wis. Stat. § 111.34(2)(a). Because there is no dispute that Roytek's disability will not permit her to work the required 12–hour shifts to meet HTI's production decision, the ultimate question is whether Roytek's failure to state an accommodation that is sufficient under § 111.34 causes her assertions to fail to state a claim for employment discrimination under § 111.34(1)(b) and (2)(a). To address these concerns more fully, I begin with the interpretation of WFEA's relevant provisions.

2. WFEA

¶ 56. I interpret Wis. Stat. § 111.34(1)(b) and (2)(a) in order to determine what is an "accommodation." When we interpret or apply a statute, we attempt to ascertain its meaning in order to give the statute its full intended effect. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. We begin with the words chosen by the legislature, giving them their plain and ordinary meanings. *Id.*, ¶ 45. This is our initial focus, because as we

have explained, "[w]e assume that the legislature's intent is expressed in the statutory language." *Id.,* ¶ 44. We are aided in ascertaining the meaning of a statute by the context in which words are placed. *Id.,* ¶ 46. If the statute's meaning is clear on its face, we need go no further; we simply apply it. *Id.,* ¶ 45. However, if the statutory language is capable of being understood by reasonably well-informed persons in two or more ways, then it is ambiguous. *Bruno v. Milwaukee County,* 2003 WI 28, ¶ 19, 260 Wis. 2d 633, 660 N.W.2d 656. A statute may also be ambiguous due to its interactions with other statutes. *State v. White,* 97 Wis. 2d 193, 198, 295 N.W.2d 346 (1980). If the statutory language is ambiguous, we may consult extrinsic sources to ascertain legislative intent. *Stockbridge Sch. Dist. v. Department of Pub. Instruction Sch. Dist. Boundary Appeal Bd.,* 202 Wis. 2d 214, 223, 550 N.W.2d 96 (1996). I conclude that the term "accommodation" is ambiguous because it reasonably could be understood in two ways: (1) as the majority does, by looking solely to § 111.34(1)(b) and concluding it is a plan that "would have allowed [Roytek] to continue her employment with HTI," majority op., ¶ 1; or (2) as I have, by reading § 111.34(1)(b) and (2)(a) together and concluding it is a plan that will permit Roytek to assist HTI in implementing its valid business decision to utilize its equipment 24 hours per day.

¶ 57. In order to accurately assess whether Roytek has stated a claim for a WFEA violation based on a disability, it is necessary to understand the inter-action between two provisions of WFEA, § 111.34(1)(b) and (2)(a). Subsection (1)(b) provides that an employer must "reasonably accommodate an employee's or prospective employee's disability unless the employer can demonstrate that the accommodation would pose a

hardship" to its business. Subsection (2)(a) affects the meaning of "accommodation" in subsection (1)(b) when it provides that "it is not employment discrimination because of disability to refuse to hire [or] employ" if the "disability is reasonably related to the individual's ability to adequately undertake the job-related responsibilities of that individual's employment[.]" These two provisions are related in that an accommodation under subsection (1)(b) must be such that it also satisfies (2)(a), by permitting the job-related responsibilities of that individual's employment to be met. Our understanding of the interaction between these two provisions is facilitated by a review of when and why the legislature created them.

¶ 58. WFEA did not protect disabled persons from discrimination until 1965. Ch. 230, Laws of 1965. A provision substantially similar to Wis. Stat. § 111.34(2)(a), explaining that it is not discrimination contrary to WFEA to refuse to provide the employee or prospective employee with work if the disability of that person is related to the individual's inability to do the job, was a part of those initial provisions. *Id.* at § 3.

¶ 59. In the 1981–82 legislative session, WFEA was revised, in part due to our decision in *American Motors Corp. v. DILHR,* 101 Wis. 2d 337, 305 N.W.2d 62 (1981), which addressed a religious discrimination claim. Those revisions included what is now Wis. Stat. § 111.34(1)(b), requiring an employer to make a reasonable accommodation for the individual's disability, unless to do so would pose a hardship on the employer. § 17, ch. 334, Laws of 1981; Wis. Legis. Council, *Information Memorandum 82–17,* at 7 (1982)[6] Subsection

---

[6] The modifier, "undue," for the term, "hardship," was included in the religious accommodation revisions made during

111.34(1)(b) did not remove the protection for the employer found in § 111.34(2)(a). Subsection (2)(a) remained unchanged during the amendments. Giving each section an independent, yet related, function permits an employer lawfully to refuse to employ an individual who does not have an accommodation to the disability that will permit the adequate undertaking of the job-related responsibilities of the individual's employment.

3. Application of WFEA to Roytek's claim

¶ 60. As I have noted above, analysis of a WFEA claim involves three steps: (1) The employee must

the same legislative session as that in which the disabilities section was revised. However, the word, "undue," was intentionally deleted from the disability discrimination provisions. Wis. Legis. Council, *Information Memorandum 82–17*, at 7 (1982). This gave an employer a lower burden in regard to when it must make a reasonable accommodation for a disability as compared with a religious-based accommodation. Wisconsin Stat. § 111.337(1), the WFEA provision that addresses religious discrimination, continues to place a heavier burden on the employer to accommodate religious practices as it requires a reasonable accommodation unless the "employer can demonstrate that the accommodation would pose an *undue hardship* . . . ."

The majority opinion erroneously imports the "undue hardship" test from federal law, asserting that "it appears quite clear that there is no real difference in the terms 'hardship' and 'undue hardship,' since the 'hardship' referred to in Wis. Stat. § 111.34(1)(b) must be substantial in nature . . . ." Majority op., ¶ 36 n.17. I disagree, as the legislative history cited above from the 1981–82 amendments, as well as the "undue hardship" standard that was chosen for accommodations to religious choices in § 111.337(1), show. In my view, the disposition of Roytek's claim does not require us to proceed as far as a hardship assessment. However, if it did, I would conclude that the majority opinion uses an incorrect standard in this regard.

431

prove he or she has a disability. *City of La Crosse Police & Fire Comm'n,* 139 Wis. 2d at 760. (2) The employee must prove an accommodation exists, that the accommodation is reasonable, but notwithstanding that reasonable accommodation, the employer refused employment. *See US Airways, Inc. v. Barnett,* 535 U.S. 391, 401–02 (2002).[7] (3) If the employee succeeds on these first two elements, the employer must then prove that the suggested accommodation is a hardship, in order to avoid a violation of WFEA. *Geen v. LIRC,* 2002 WI App 269, ¶ 15, 258 Wis. 2d 498, 654 N.W.2d 1. However, if the employee does not prove an accommodation that permits the employee to adequately undertake the job-related responsibilities of that individual's employment, the employer may refuse to employ that individual without violating WFEA. Wis. Stat. § 111.34 (1)(b) and (2)(a); *see also Geen,* 258 Wis. 2d 498, ¶ 15. This makes sense because otherwise an employer would be required to hire all individuals without regard for the job-related responsibilities the employer sought to accomplish by making the job available in the first instance.

---

[7] The decision in *US Airways* is instructive in regard to the foundational issue of an accommodation because it begins with a statement showing that a reasonable accommodation is one that permits the employee to perform the essential functions of the job. *US Airways, Inc. v. Barnett,* 535 U.S. 391, 393 (2002). It then explains that an accommodation must be shown to be reasonable only on its face, in that with this change the employee can do the essential functions of the job. *Id.* at 401. The burden will then shift to the employer to show hardship. *Id.* at 402. Here, as we explain throughout, the plan offered by Roytek was not sufficient on its face.

¶ 61. Courts must keep the provisions of Wis. Stat. § 111.34(2)(a) in mind when considering whether what has been offered is an "accommodation" under § 111.34(1)(b) because subsection (1)(b) requires an employer to employ the individual when the accommodation satisfies subsection (2)(a), unless the employer proves a hardship.[8] If the analysis shifts too quickly to whether the employee's suggestion creates, or does not create, a hardship for the employer, the initial analysis of whether what is offered is actually a statutory "accommodation" will be lost, as will the employer's right to make valid business decisions without violating the law. Therefore, an accommodation that is sufficient under the statutes permits the employee to work *and* at the same time, it permits the employer to have the job-related responsibilities of that individual's employment met. *Target Stores v. LIRC,* 217 Wis. 2d 1, 17, 576 N.W.2d 545 (Ct. App. 1998).

¶ 62. Here, Roytek proved she has a disability under WFEA. However, she did not prove an "accommodation" under Wis. Stat. § 111.34(1)(b). Her suggestion of permanent eight-hour shifts did not permit HTI to implement its valid management decision of increasing production by using its equipment 24 hours per day. Stated another way, her suggestion was not an "accommodation" because it did not permit the employer to have the job-related responsibilities of Roytek's employment met, *i.e.,* working for 12–hour shifts. Section 111.34(2)(a) requires this condition in order to make a prima facie showing of an accommodation. *See US Airways,* 535 U.S. at 402. The majority opinion ignores

---

[8] This is very similar to the reasoning in *US Airways,* where the accommodation must permit the employer's job to be done or no accommodation was provided. *See US Airways,* 535 U.S. at 402.

this obligation of a WFEA claimant by repeatedly stating that HTI has not shown hardship. *See, e.g.,* majority op., ¶ 34 n.15, ¶ 35.

¶ 63. The majority opinion relies extensively on our decision in *Crystal Lake Cheese Factory v. LIRC,* 2003 WI 106, 264 Wis. 200, 664 N.W.2d 651, where we held that it was a reasonable accommodation without hardship to the employer to require the employer to retain an employee who could not do all the tasks that she had been hired to perform. *Id.,* ¶ 51. We concluded that the employer was required to partially reassign the employee's duties to two of the three other employees in the disabled worker's department because those employees said they would complete the tasks that the disabled worker could not perform. *Id.,* ¶ 78. Additionally, the employer had not shown that the requested physical modification necessary to accommodate a wheelchair was a hardship. *Id.,* ¶ 80.

¶ 64. It is important to note that the majority decision here goes far beyond our conclusions in *Crystal Lake* because *Crystal Lake* focused on *the tasks* that comprised the job that the disabled worker was hired to perform. *Id.,* ¶ 70. In *Crystal Lake,* we concluded that because *the tasks* the job required would continue to be fully accomplished, albeit not all by the disabled employee, what the employee offered was a reasonable accommodation. *Id.,* ¶ 78. In other words, the valid management decision the employer made about what tasks it needed done, got done.

¶ 65. Here, by contrast, HTI made a valid management decision to increase production by implementing 12–hour shifts, two per day. Roytek suggested an eight-hour work schedule, which may seem to be an accommodation from her perspective because she could do it. However, it is not a statutory accommodation,

because HTI is not being permitted to use its equipment 24 hours a day for a full team of workers on each shift. And contrary to the accommodation in *Crystal Lake* where other workers offered to do the tasks that the disabled worker could not do, no other worker has offered to do Roytek's missing four hours per shift. That no such offer was made is understandable because the other workers were already working 12 hours per shift, four hours of which were the same four hours that Roytek was not working.

¶ 66. Furthermore, if the accommodation to work less than a full shift is held to be sufficient to meet the employee's burden under Wis. Stat. § 111.34(1)(b), then that interpretation cancels the employer's right under § 111.34(2)(a) to make a valid management decision to run its manufacturing business 24 hours per day. This was never the intent of the legislature in enacting WFEA. Rather, the purpose of WFEA was to encourage employers to evaluate an employee or applicant for employment based upon the employee's or applicant's individual qualifications. Section 111.31(2).

¶ 67. The majority also relies on HTI's permitting Roytek to work partial shifts while her back condition was improving to support its conclusion that HTI should be required to continue with shortened shifts on a permanent basis. Majority op., ¶ 35. This conclusion appears to be based in part on the court of appeals decision in *Target,* which in my view, the majority misinterprets.

¶ 68. In *Target,* the employee was cited by Target for repeatedly sleeping on the job. Management suggested that she see a physician to determine why she kept dosing off at work. She did so and learned she had a type of sleep apnea. The physician suggested treatments, which the employee began. However, shortly

thereafter, she was again cited for sleeping on the job, and even though management knew that she was undergoing treatment for a sleep disorder, it terminated her, rather than waiting a reasonable amount of time to see if the treatment would be effective. The employee sued under WFEA, claiming discrimination due to disability, and LIRC concluded that Target violated WFEA by not continuing her employment. LIRC said because she was actively treating her disability and it would in "all likelihood be [resolved on] a short-term basis," Target should have given the treatment a chance to succeed. *Target,* 217 Wis. 2d at 8–9.

¶ 69. The court of appeals agreed with LIRC. However, it did not require a permanent change in expectations in regard to the employee's not sleeping on the job, but rather a "temporary accommodation to permit medical treatment which, if successful, will remove the difficulty in performing the job-related responsibility." *Id.* at 19. Here, the majority permits a permanent disregard of the employer's business decision about how to increase production. In so doing, the majority uses HTI's forbearance from termination while Roytek was attempting to resolve her back condition against HTI. This puts employers between the proverbial rock and a hard place: *Target* requires an employer to wait a reasonable time when an employee is being treated to resolve a medical condition and the majority opinion herein concludes that an employer who waits to see if a medical condition will resolve, will have that used against it, if the condition becomes permanent and the employee is fired.

¶ 70. Also of importance to the case at hand is the court of appeals explanation in *Target* of the interrelationship between Wis. Stat. § 111.34(1)(b) and (2)(a):

436

> When read together, the only reasonable construction
> of these two provisions is that *the purpose of reasonable*
> *accommodation is to enable employees to adequately*
> *undertake job-related responsibilities.*

*Id.* at 17 (emphasis added). The relationship between these two statutes is the issue here too, but the majority's interpretation ignores it. In so doing it cancels § 111.34(2)(a), which protects an employer from having to employ individuals when the job-related responsibilities of the individual's employment will not be met.

¶ 71. It is interesting to note that the majority says:

> We begin by recognizing the important role that management prerogatives play in the success of a business. This court has stated that "it is necessary to preserve the freedom of private enterprise to manage its business as it sees fit." *Libby, McNeill & Libby v. WERC*, 48 Wis. 2d 272, 280, 179 N.W.2d 805 (1970) [additional citations omitted]. We are mindful that a business must have the right to set its own employment rules to encourage maximum productivity.

Majority op., ¶ 29. However, these are hollow assurances because after the release of the decision in this case, no employer will be able to say that a certain number of hours must be worked in a shift or that it will use its equipment 24 hours per day and seven days a week, if employees and potential employees have notes from their doctors that say that those individuals have disabilities that prevent them from working more than a stated number of hours in a shift.

¶ 72. This is a sea change in Wisconsin employment law because heretofore employers were not required to forego valid business decisions, such as using

equipment 24 hours per day, to suit employees and prospective employees who were not able to undertake those job-related responsibilities. It is important to note that although Roytek wanted to work eight-hour shifts, the majority opinion applies equally to other employees and prospective employees who can work only six hours of an eight-hour shift. For example, when the General Motors plant in Janesville works three eight-hour shifts per day and one or more employees or prospective employees have statements from a physician that the individual can work only six-hour shifts, General Motors will be required to let its equipment stand idle for two hours each shift for each employee who has such a disability. This cannot be what the legislature had in mind when it amended WFEA in 1981.

## III. CONCLUSION

¶ 73. I conclude no WFEA violation occurred because Roytek's offer to continue working only two-thirds of her shift is insufficient to be an "accommodation," as that term is used in Wis. Stat. § 111.34(1)(b). Additionally, Roytek's offer results in negating § 111.34 (2)(a), which provides that it is not discrimination to refuse to employ an individual when the job-related responsibilities of that individual's employment are not met. Accordingly, I respectfully dissent.

¶ 74. I am authorized to state that Justice DAVID T. PROSSER joins this dissent.